[No. C019041. Third Dist. Sept. 7, 1995.]

In re KEISHA T. et al., Persons Coming Under the Juvenile Court Law.
McCLATCHY NEWSPAPERS, INC., Petitioner and Respondent, v.
KEISHA T. et al., Objectors and Appellants.

COUNSEL

Orrick, Herrington & Sutcliffe, Kenneth C. Mennemeier, Jennifer P. Brown, Morrison & Foerster, Valerie R. Park, Carol S. Chrisman and Denis Zilaff for Objectors and Appellants.

Phillip S. Cronin, County Counsel (Fresno) and Howard K. Watkins, Deputy County Counsel, as Amici Curiae on behalf of Objectors and Appellants.

Diepenbrock, Wulff, Plant & Hannegan and Charity Kenyon for Petitioner and Respondent.

OPINION

MORRISON, J.—Welfare and Institutions Code section 827, subdivision (a) permits juvenile court records to be inspected by certain specified persons and "any other person who may be designated by court order of the judge of the juvenile court upon filing a petition therefor." We interpret this language to entrust to the juvenile court's discretion whether to grant the press access to particular confidential court records in juvenile dependency cases. At issue is the conflict between "the salutary function served by the press" in subjecting the juvenile welfare system to "the beneficial effects of public scrutiny" (*Brian W.* v. *Superior Court* (1978) 20 Cal.3d 618, 625 [143

Cal.Rptr. 717, 574 P.2d 788]), and the need to protect the confidentiality afforded to society's most vulnerable members, abused and neglected children. Since the Legislature has entrusted the juvenile court with the responsibility for the care and protection of such children in accordance with the best interests of the minors and the public (Welf. & Inst. Code, § 202), it is appropriate that the Legislature has also given the juvenile court the authority to resolve this conflict between public and private interests on a case-by-case basis.

McClatchy Newspapers, Inc., doing business as the Sacramento Bee, petitioned the juvenile court for permission to inspect and copy the court records of 10 minors. The court conditionally granted the petition and eventually established a procedure under which a temporary judge would release certain information in the juvenile court files to a reporter. The minors appeal from the court order, challenging both the decision to release the information and the procedure established by the juvenile court. We remand for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

In December 1992, the Sacramento Bee petitioned the juvenile court under Welfare and Institutions Code section 827 (all further undesignated section references are to this code) for permission to inspect and copy juvenile court records pertaining to 10 minors who were the subject of juvenile court proceedings. A declaration by Nancy Weaver, a reporter from the Sacramento Bee, indicated she would use the material to write a story about the ability or inability of Sacramento County to protect abused and neglected children. She explained county officials said they did not have enough staff to protect children. When she asked the director of the Sacramento County Department of Health and Human Services (the Department) about the deaths of three abused children, he replied the safety net is "being ripped apart." Weaver and her editor agreed to abide by a protective order and not to publish or disclose the identity of the minors, members of the minors' family, those who provide care for the minors and their siblings, or those who reported any abuse.

The Department did not oppose inspection of the court records by the Sacramento Bee, but did oppose copying or any disclosure of the records. It had not agreed to the protective order and did not believe it was sufficient to protect the minors. The Department proposed a protective order that would allow a representative of the Sacramento Bee to inspect the court records, but not copy them. All names of individuals and identifying information would be held confidential. The Sacramento Bee would waive its First

Amendment rights to disclose names learned from other sources and would allow the juvenile court to review any article for compliance with the protective order before publication.

Several of the minors and their families objected to the Sacramento Bee's petition, arguing disclosure would not be in the best interests of the minors, and many of the records were protected under section 10850, which requires confidentiality of records made or kept by federally funded public social service agencies. The minors also relied upon a recent case from the Fifth District, which held child protective services records could not be released to the press.[1]

In June 1993, the juvenile court conditionally granted the Sacramento Bee's petitions, subject to a review of each case to ensure there was no reasonable likelihood of harm to the child or the child's interest (the June 1993 order). An in camera hearing to determine the extent of access was set for July. A protective order was issued, authorizing only Nancy Weaver to inspect, but not copy, the court files. Names of individuals were not to be published or disseminated and unique, identifying information was not to be published or disclosed. The disclosed information was to be used only for purposes of writing a newspaper article. Weaver, the Sacramento Bee, and its employees agreed to maintain notes and the information with the same degree of care as they accord highly sensitive information that is subject to the protections of the newsperson's shield law of Evidence Code section 1070 and not to disclose any names in the records, even if obtained from another source. Any request for this information from the Sacramento Bee, by subpoena or otherwise, would be disclosed to the court and counsel.

The juvenile court abandoned the in camera hearings and adopted a novel procedure to determine the appropriate access to the court records. A proposed order set forth a procedure in which a temporary judge would first meet with interested counsel of record to discuss what information should not be disclosed and then meet with Weaver to answer her questions about the contents of the court records. The minors opposed this procedure.

Various declarations were filed, both in support of and in opposition to the release of the juvenile court files. Those in opposition stressed the need for

---

[1]The Fifth District case, *McClatchy Newspapers, Inc.* v. *Fresno County Dept. of Social Services* (Cal.App.), was depublished on February 25, 1993, before the juvenile court rendered its decision in this case.

confidentiality to ensure full reporting of child abuse and neglect and the need to establish and maintain the trust of children who are the victims of abuse and neglect.[2] The declarations in support of disclosure emphasized the need to keep the identities of all involved confidential, but stated the proposed protective order provided sufficient protection for the best interests of the minors. These declarations stressed the need for public education and awareness of the juvenile justice system. The Sacramento Bee also provided scholarly articles arguing for more openness in juvenile court proceedings.

After several hearings, the juvenile court issued its order governing inspection on July 7, 1994, nunc pro tunc to June 30, 1994 (the June 1994 order). The juvenile court appointed Morrison England as temporary judge. After notice of the date of an inspection, interested counsel could request to meet with England in camera to discuss what information in the court's files counsel believed should not be released. In cases of disagreement, England would decide what should be released. England would then meet with Nancy Weaver to answer her questions about the juvenile court system as reflected in these records, including services provided to the minors and their families. England would also inform Weaver of any problems with the system or services reflected in the records. These proceedings would be governed by the previously issued protective order.

The parties reserved their right to seek review of the decision granting access, the protective order, and the June 1994 order. The presiding judge of the juvenile court would be present during the initial in camera proceedings to provide England with sufficient guidance. All in camera proceedings would be transcribed by a court reporter. The order noted the Sacramento County Grand Jury had concluded that day that "the County is failing to adequately respond" to the concern of abused and neglected children. The order was stayed until August 15, 1994.

The minors then appealed. They sought a stay of enforcement of the June 1994 order, which this court granted.

### Discussion

I.  *Appealability of Order and Scope of Review*

In granting the stay, this court requested letter briefs on the issue of the appealability of the June 1994 order. We asked the parties to address

---

[2]This court permitted the minors to file an additional appendix under seal, containing declarations of professionals familiar with the minors' cases detailing the harmful effects releasing the records would have on the minors.

whether the June 1994 order was appealable, and if not, whether we should treat the appeal as a petition for a writ of mandate or other extraordinary relief.

The minors contend the June 1994 order is appealable as a postjudgment order under section 395. ▮ Section 395 provides any judgment under section 300 and any subsequent order may be appealed. Under section 300, a dispositional order is a judgment. (*In re Eli F.* (1989) 212 Cal.App.3d 228, 233 [260 Cal.Rptr. 453].) ▮ The minors contend dispositional orders had been entered in all of their cases before June 30, 1994. Since the instant record does not contain the juvenile court records at issue, we cannot determine whether this is true. In any event, the Sacramento Bee's petitions were not part of the dependency proceedings; the petitions commenced a special proceeding on a collateral matter. The June 1994 order was not an order on the dependency proceeding, so its appealability is not governed by section 395. The review of an order on a petition for inspection of juvenile court records cannot depend on whether the records are sought before or after a dispositional order in the underlying juvenile proceeding has been issued.

The petitions for review of the juvenile court records initiated a special proceeding on a collateral matter. (See Code Civ. Proc., §§ 21, 23.) As both the Sacramento Bee and the minors recognize, the June 1994 order finally established the Sacramento Bee's legal right to inspect some portion of the juvenile court files. The June 1993 order resolved this legal issue conditionally, subject to the development of protective proceedings. Once the June 1994 order developed such proceedings, resolution of the legal issue was final. The June 1994 order, therefore, is appealable as a final judgment in a special proceeding. (*Millan* v. *Restaurant Enterprises Group, Inc.* (1993) 14 Cal.App.4th 477, 485 [18 Cal.Rptr.2d 198]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 70, p. 94.)

While the June 1994 order did not finally determine what portions of the juvenile court records would be disclosed, it set up the procedure that would result in disclosure without an opportunity for review. The temporary judge would make the decision and disclose information in response to the reporter's questions. At that point, there would be no way to prevent any damage from an erroneous decision. To be meaningful, review of the court's decision to permit access to the juvenile court records must be available prior to actual release of the records. Accordingly, we hold an order granting a petition under section 827 is appealable as a final judgment in a special proceeding even absent a final decision as to which portions of the juvenile court records will be released.

The notices of appeal specify the appeal is from the June 1994 order. The Sacramento Bee contends this specification limits the appeal to the procedures established in the June 1994 order for disclosing the juvenile court records. The Sacramento Bee contends the minors are precluded from challenging the decision to permit access to those records in the June 1993 order.

Notices of appeal are to be liberally construed in favor of their sufficiency. (Cal. Rules of Court, rule 1(a).) The June 1993 order which announced the court's decision to grant the Sacramento Bee's petitions was expressly conditional; it was subject to approval after review of the records. The procedure for accomplishing this review and the decisionmaking process was not finally established until the June 1994 order, which expressly recognized that the parties reserved their rights to seek review of the earlier orders as well as that order. We construe the notices of appeal liberally to include the June 1993 order. (See *In re Tracy Z.* (1987) 195 Cal.App.3d 107, 112 [240 Cal.Rptr. 445] [notice of appeal citing only jurisdictional finding and decision liberally construed to include appeal from subsequent dispositional order].)

## II. *Release of Juvenile Court Records to the Press*

### A. *No First Amendment Issue*

In *San Bernardino County Dept. of Public Social Services* v. *Superior Court* (1991) 232 Cal.App.3d 188, at page 205 [283 Cal.Rptr. 332], the court concluded the First Amendment right of access to court proceedings did not apply to juvenile dependency proceedings. The Sacramento Bee is not asserting a First Amendment right to inspect the juvenile court records. It is not, however, conceding it has no such right. Instead, it asserts section 827 permits the juvenile court to grant the press access to juvenile court records in certain cases, just as the court can permit the press to attend juvenile court hearings under section 346, so any constitutional problem posed by a rule of mandatory closure is avoided.[3] Since we agree with the Sacramento Bee's interpretation of section 827, we need not address any First Amendment issues.

---

[3]In *Globe Newspaper Co.* v. *Superior Court* (1982) 457 U.S. 596 [73 L.Ed.2d 248, 102 S.Ct. 2613], the United States Supreme Court held a rule requiring mandatory closure of the courtroom to the press during the testimony of minor sex victims in all cases was unconstitutional. At least one court has read this case to suggest that an across-the-board ban on press access to juvenile proceedings would pose a constitutional issue. (*U.S.* v. *A.D.* (3d Cir. 1994) 28 F.3d 1353, 1358.)

## B. *Section 827*

■ It is the express intent of the Legislature "that juvenile court records, in general, should be confidential." (§ 827, subd. (b).) The strong public policy of confidentiality of juvenile proceedings and records has long been recognized.[4] (*T.N.G.* v. *Superior Court* (1971) 4 Cal.3d 767, 778 [94 Cal.Rptr. 813, 484 P.2d 981]; *Foster* v. *Superior Court* (1980) 107 Cal.App.3d 218, 228 [165 Cal.Rptr. 701].) Courts have recognized, however, that this policy of confidentiality is not absolute. The juvenile court, which is in the best position to determine whether disclosure is in the best interests of the minor, has been vested with "exclusive authority to determine the extent to which juvenile records may be released to third parties." (*T.N.G.* v. *Superior Court, supra,* at pp. 778, 781.) Confidentiality cannot always be honored. For example, where the principle of confidentiality conflicts with a defendant's constitutional rights of confrontation and cross-examination, it must give way. (*Foster* v. *Superior Court, supra,* at p. 229.)

That juvenile court records are confidential, but not absolutely so, is reflected in section 827. At the time of the Sacramento Bee's petitions in 1992, that section provided in part: "Except as provided in Section 828 [relating to disclosure to law enforcement agencies], a petition filed in any juvenile court proceeding, reports of the probation officer, and all other documents filed in any such case or made available to the probation officer in making his or her report, or to the judge, referee or other hearing officer, and thereafter retained by the probation officer, judge, referee, or other hearing officer, may be inspected only by court personnel, the district attorney, the minor who is the subject of the proceeding, his or her parents or guardian, the attorneys for the parties, and such other persons as may be designated by court order of the judge of the juvenile court upon filing a petition therefor." (Stats. 1991, ch. 1202, § 21.)

Section 827 has been amended several times since 1991, and now expands the list of persons who may inspect juvenile court records without court order to include city attorneys or prosecutors who prosecute criminal or juvenile cases; judges, referees, hearing officers, and law enforcement officers actively participating in criminal or juvenile proceedings involving the minor; the superintendent of the school district where the minor is enrolled;

---

[4]It has been suggested that the need for confidentiality is more compelling in dependency cases than in delinquency cases since the delinquent child is at least partly responsible for being in court and the public has an interest in delinquency cases akin to that in criminal cases, but the child may be blameless and there is no similar public interest in dependency cases. (*San Bernardino County Dept. of Public Social Services* v. *Superior Court, supra,* 232 Cal.App.3d at p. 200, fn. 7, quoting from *In re T.R.* (1990) 52 Ohio St.3d 6 [556 N.E.2d 439, 449].)

members of child protective agencies, children's multidisciplinary teams, and persons or agencies providing treatment or supervision of the minor. (Stats. 1994, ch. 1019, § 4.) At all times since the 1992 amendment, section 827 has permitted inspection by "any other person" designated by court order.[5] (*Ibid.*; Stats. 1994, ch. 1018, § 1; Stats. 1994, ch. 453, § 14; Stats. 1993, ch. 589, § 193; Stats. 1992, ch. 148, § 1.)

Subdivision (a) of section 827 thus contains open-ended language permitting the juvenile court to designate by court order other persons who may inspect juvenile court records. This language has been consistently interpreted to vest the juvenile court with exclusive authority to determine when a release of juvenile court records to a third party is appropriate. (*T.N.G.* v. *Superior Court, supra,* 4 Cal.3d at p. 778; *In re Tiffany G.* (1994) 29 Cal.App.4th 443, 451 [35 Cal.Rptr.2d 8]; *In re Michael B.* (1992) 8 Cal.App.4th 1698, 1706 [11 Cal.Rptr.2d 290]; *Lorenza P.* v. *Superior Court* (1988) 197 Cal.App.3d 607, 610-611 [242 Cal.Rptr. 877]; *Navajo Express* v. *Superior Court* (1986) 186 Cal.App.3d 981, 985 [231 Cal.Rptr. 165].) The juvenile court has both "the sensitivity and expertise" to make this determination. (*In re Maria V.* (1985) 167 Cal.App.3d 1099, 1103 [213 Cal.Rptr. 733].)

The minors and amicus curiae argue the juvenile court's discretion in this regard is not absolute.[6] They assert section 827 limits disclosure, consistent with the policy of confidentiality of juvenile court records, and does not permit disclosure to the press.

The minors contend the Legislature did not intend to permit release to the press, or indeed the public at large, but only to narrow categories of persons. Amicus curiae argues disclosure of child welfare services records is limited to purposes directly related to the administration of child welfare services.

Permissible disclosure under section 827 is more extensive than the minors or amicus curiae acknowledge. Case law has recognized that a broader category of persons than those enumerated in section 827 may be permitted access to material in juvenile court files in the appropriate case. As noted above, the cloak of confidentiality must fall to the rights of a criminal defendant to mount a defense. (*Lorenza P.* v. *Superior Court, supra,* 197 Cal.App.3d 607, 610-611; *Foster* v. *Superior Court, supra,* 107 Cal.App.3d 218, 229.)

Portions of juvenile court records may also be disclosed in connection with civil proceedings independent of the dependency or delinquency proceeding involving the minor. In *Navajo Express* v. *Superior Court, supra,*

---

[5]We accept the minors' assertion that the change in language from "such other persons" to "any other person" was only a stylistic change.

[6]This court granted the request of Fresno County Department of Social Services to file an amicus curiae brief in support of the minors' appeal.

186 Cal.App.3d 981, the court rejected an argument that section 827 revealed an intention that juvenile records are not subject to discovery in a civil action brought by the minor. "The section itself contemplates that situations will exist where inspection by third parties will be permitted and puts protection of confidentiality of the records within the discretion of the juvenile court." (*Id.* at pp. 985-986.) In approving guidelines for disclosure, the court limited disclosure to cases where the juvenile records pertained to a plaintiff in a civil action. (*Id.* at p. 986.)

In *Wescott* v. *County of Yuba* (1980) 104 Cal.App.3d 103 [163 Cal.Rptr. 385], juvenile records were also sought for use in a civil case. Several juveniles were involved in a shooting incident; the mother of one of the minors believed they were playing Russian roulette. She sought the release of the sheriff's records about the incident to use in a civil action she was prosecuting against one or more of the other juveniles. This court held section 827 governed the release of sheriff's records regarding a minor rather than the Public Records Act and therefore a juvenile court order was required for the release. (104 Cal.App.3d at pp. 106-109.) While not deciding the issue, *Wescott* at least suggests portions of the records may be released in a civil proceeding where the minor is not the plaintiff. (*Id.* at p. 110.)

In *In re Maria V.*, *supra*, 167 Cal.App.3d 1099, the mother in a dependency proceeding sought access to the juvenile court files of her brother to support placing her child with the maternal grandmother. The juvenile court reviewed the files in camera and released to the mother any information pertaining to the family and the suitability of the grandmother as an alternative placement. The mother argued her lawyer should have reviewed the records. The appellate court noted that under section 827, the juvenile court had "exclusive authority to determine whether disclosure of juvenile records to persons not specifically named in the statute is in the best interest of the minor." (*Id.* at p. 1103.) The court found the juvenile court's in camera proceeding was the proper way to resolve the conflict between the mother's right to a full evidentiary hearing on the issue of placement of her child and the rights of her brother and others to the confidentiality of the juvenile court files. (*Ibid.*)

These cases indicate there may be situations in which competing interests require the disclosure of some material in a juvenile court record. They all recognize it is the juvenile court that is in the best position and statutorily authorized to make the decision of whether and what material should be released.

The minors contend section 827 prohibits disclosure to the press because it prohibits dissemination of juvenile court records. Subdivision (a) of

section 827 provides in part: "Any records or reports relating to a matter within the jurisdiction of the juvenile court prepared by or released by the court, a probation department, or the county department of social services, any portion of those records or reports, and information relating to the contents of those records or reports, shall not be disseminated by the receiving agencies to any persons or agencies, other than those persons or agencies authorized to receive documents pursuant to this section." The minors argue since the press would disseminate the information by publishing it, the press cannot have access to it.

While this provision prohibiting dissemination speaks only of dissemination by receiving agencies, it has been held to prohibit the dissemination of juvenile court records by individuals as well as agencies. (*In re Tiffany G.,* *supra,* 29 Cal.App.4th 443, 450-452.) The court in *Tiffany G.* indicated that allowing individuals with access to juvenile court records, in that case a parent, to disseminate them, would turn the expressed policy of confidentiality on its head. The court stressed the juvenile court's authority in determining the extent to which its files are released and the need to make the children's best interests the primary concern in exercising that authority. (*Id.* at p. 451.)

The minors read this antidissemination provision in section 827 to prohibit disclosure to the press because that disclosure will result in dissemination. We think this reading is too narrow; section 827 does not prohibit any disclosure that may result in further dissemination of the juvenile court records. For example, in cases where juvenile court records are disclosed for use in other court proceedings, there will be some dissemination.

Instead, the prohibition against dissemination recognizes the exclusive authority of the juvenile court to determine who may have access to juvenile court records. This provision prohibits one who receives access to juvenile court records from independently making a decision to disclose such records to others not authorized by the statute or court order. It is the juvenile court, not the recipient, that has the authority to decide to whom juvenile court records may be released. If a juvenile court determines, consistent with the best interests of the minors, that records should be released to the press, the court has made the decision that the public can learn the content of the disclosed records. We find nothing in section 827 that prohibits the juvenile court from making that decision. Section 827 does not limit the other persons who may obtain access to juvenile court records by court order. The absence of an express limitation does not mean the juvenile court's discretion is unfettered. The juvenile court must determine whether disclosure is in the best interests of the minor. (*T.N.G.* v. *Superior Court, supra,* 4 Cal.3d at p. 781.)

## C. *Rule 1423*

■ Guidance for juvenile courts in making the decision whether to permit persons to inspect, obtain, or copy juvenile court records is provided by rule 1423 of the California Rules of Court. Rule 1423(b) provides in part: "In determining whether to authorize inspection or release of juvenile court records, in whole or in part, the court shall balance the interests of the child and other parties to the juvenile court proceedings, the interests of the petitioner, and the interests of the public. The court shall permit disclosure of, discovery of, or access to juvenile court records or proceedings only insofar as is necessary, and only if there is a reasonable likelihood that the records in question will disclose information or evidence of substantial relevance to the pending litigation, investigation, or prosecution. The court may issue protective orders to accompany authorized disclosure, discovery, or access."

California Rules of Court, rule 1423(b) sets forth the proper balancing test for the juvenile court to undertake. It recognizes competing interests, including the public interest, may tip the balance in favor of disclosure. The minors contend their juvenile court records cannot be disclosed to the Sacramento Bee because such disclosure is not necessary and will not disclose information relevant to a pending litigation, investigation, or prosecution. As discussed later, whether the confidential information is necessary for the petitioner's use is a factor to be considered by the juvenile court. We do not accept as valid a reading of the rule that restricts the juvenile court's discretion to permit disclosure of material in juvenile court records by allowing disclosure only where the material will be used in a pending litigation, investigation, or prosecution.

The Judicial Council is authorized to "adopt rules for court administration, practice, and procedure, not inconsistent with statute, . . ." (Cal. Const., art. VI, § 6.) To the extent California Rules of Court, rule 1423(b) limits the discretion of the juvenile court to disclose juvenile court records only to those who need them for pending litigation, investigation, or prosecution, regardless of whether disclosure to others is in the best interest of the minor, the rule restricts the juvenile court's discretion beyond that provided in the statute. The Judicial Council has no authority to so reduce the court's discretion. A rule that purports to do so is inconsistent with statute and, to that extent, invalid. (See *People* v. *Hall* (1994) 8 Cal.4th 950, 960-963 [35 Cal.Rptr.2d 432, 883 P.2d 974] [invalidating rule 428(b) to extent it reduces trial court's discretion to consider full range of aggravating factors in sentencing]; *People* v. *Zamarron* (1994) 30 Cal.App.4th 865, 871-872 [36 Cal.Rptr.2d 17] [same].)

### D. *Section 346: Media Access to Dependency Hearings*

■ The minors contend that if the Legislature had intended juvenile court records could be disclosed to the press, it would have said so. The minors contend the Legislature intended a difference in press access between juvenile court hearings and juvenile court records. While section 827 governs juvenile court records in both dependency and delinquency cases, there are separate statutes governing access to dependency hearings (§ 346) and delinquency hearings (§ 676). Both statutes provide "the public shall not be admitted to a juvenile court hearing" without the consent of the minor. Section 676 provides an exception for cases where the minor is alleged to have committed a serious offense. Both statutes also permit the judge or referee to admit persons he "deems to have a direct and legitimate interest in the particular case or the work of the court." (§§ 346, 676, subd. (a).)

In *Brian W.* v. *Superior Court* (1978) 20 Cal.3d 618 [143 Cal.Rptr.3d 717, 514 P.2d 788], a minor sought to exclude media representatives from a hearing to determine his fitness to be dealt with under juvenile court law. He argued press attendance was inconsistent with the confidentiality afforded minors under California law. In rejecting this argument, the court noted the judge had authority to protect the minor's interests, and stressed "the important role of the press in monitoring the administration of justice on behalf of the public, . . ." (*Id.* at p. 626.) The high court held, "that in vesting the judge with discretion to admit to juvenile court proceedings persons having a 'direct and legitimate interest in the particular case or the work of the court,' it was the purpose of the Legislature to allow press attendance at juvenile hearings." (*Id.* at p. 623.) In *San Bernardino County Dept. of Public Social Services* v. *Superior Court*, *supra*, 232 Cal.App.3d 188, at page 195, the court found the juvenile court also had discretion under the identical language in section 346 to admit the press to dependency proceedings.

The minors contend the absence of similar language in section 827 indicates the Legislature did not intend to permit press access to juvenile court records. We disagree. The Legislature did grant the juvenile court discretion to permit access to court records to others by court order. The absence of the " 'direct and legitimate interest in the particular case or the work of the court' " language simply reflects the broader scope of legitimate interests in some portions of the juvenile court records. The records may be sought for use in different proceedings or, as here, to shed public light not merely on the workings of the juvenile court, but on the entire juvenile welfare system.

### E. *Section 10850: Confidentiality of Public Social Services Records*

■ The minors contend further evidence of the Legislature's intent not to permit press access to juvenile court records can be found in section

10850, which prohibits the release of certain records. Section 10850, subdivision (a) provides: "Except as otherwise provided in this section, all applications and records concerning any individual made or kept by any public officer or agency in connection with the administration of any provision of this code relating to any form of public social services for which grants-in-aid are received by this state from the United States government shall be confidential, and shall not be open to examination for any purpose not directly connected with the administration of that program, or any investigation, prosecution, or criminal or civil proceeding conducted in connection with the administration of any such program. The disclosure of any information which identifies by name or address any applicant for or recipient of these grants-in-aid to any committee or legislative body is prohibited, except as provided in subdivision (b)." Under subdivision (b), lists of aid recipients and any confidential information pertaining to applicants or recipients can be disclosed only to certain entities for certain purposes. A willful violation of the subdivision is a misdemeanor. (§ 10850, subd. (b).)

The minors argue since many documents generated by federally funded social agencies are part of juvenile court files, section 10850 "reinforces the notion that juvenile court records should remain protected from media review." The minors also suggest section 10850 may flatly prohibit the disclosure of the Department records within the juvenile court file. Amicus curiae argues the statute does prohibit such disclosure.[7]

We find no support in case law for analyzing the release of documents in juvenile court files under section 10850 rather than section 827 and neither the minors nor amicus curiae provide any. In *Lorenza P.* v. *Superior Court*, *supra*, 197 Cal.App.3d 607, a mother was charged with the murder of her daughter. The defense sought child protective services records of the victim,

---

[7]The minors' argument that section 10850 creates a flat prohibition is made in a footnote, rather than under a separate heading. (See Cal. Rules of Court, rule 15(a).) We interpret this casual treatment as reflecting their lack of reliance on this argument. We further note the Department, although indicating all its records came within section 10850 because the Department received federal and state grants, did not object in the juvenile court to the release of these records, only to the manner of inspection and the scope of the protective order. The Department did not argue that release would cause it to violate section 10850 or jeopardize its federal funding, nor do the minors now make these arguments. The arguments of amicus curiae greatly expand the reliance on section 10850. Amicus curiae argues that section 10850 controls and prohibits disclosure of the Department records; it also raises the possible loss of federal funding if section 10850 is violated. "As a general rule, issues not raised by the appealing parties may not be considered if raised for the first time by amici curiae. [Citations.]" (*Interinsurance Exchange* v. *Spectrum Investment Corp.* (1989) 209 Cal.App.3d 1243, 1258 [258 Cal.Rptr. 43].) We limit our consideration of the effect of section 10850 to the points raised by the minors.

her brother, and the accused. The court analyzed access to the child protective services records of the two minors under section 827; it applied section 10850 only to the records of the adult mother. (197 Cal.App.3d at pp. 610, 612.) Courts analyzed access to records in dependency proceedings only with reference to section 827 in *In re Tiffany G.*, *supra*, 29 Cal.App.4th 443, 449-453; *In re Michael B.*, *supra*, 8 Cal.App.4th 1698, 1706; and *In re Maria V.*, *supra*, 167 Cal.App.3d 1099, 1102-1103. This analysis is in keeping with the Supreme Court's pronouncement that juvenile courts have "exclusive authority" over the release of their court records. (*T.N.G.* v. *Superior Court*, *supra*, 4 Cal.3d at p. 778.)

Sections 10850 and 827 do not purport to deal with the same subject matter, so the rule of construction that the more specific statute controls is not applicable. (*Shoemaker* v. *Myers* (1990) 52 Cal.3d 1, 21 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016].) Section 10850 requires confidentiality of the applications and records of public social services that receive federal aid. Section 827 governs access to juvenile court records. There is some overlap because records of public social service agencies may become part of juvenile court records. In such circumstances, our role is to harmonize the statutes. (*People* ex rel. *Deukmejian* v. *County of Mendocino* (1984) 36 Cal.3d 476, 488 [204 Cal.Rptr. 897, 683 P.2d 1150].)

The confidentiality afforded by section 827 is designed to protect the best interests of the minors, a matter best entrusted to the juvenile court. (*T.N.G.* v. *Superior Court*, *supra*, 4 Cal.3d at p. 778.) The focus of section 10850 is the confidentiality of the identity of aid recipients. "It seems clear to us that the legislative purpose embodied in section 10850 was to prohibit disclosure of the identity of an applicant for or recipient of public social services to any person or agency other than those specified, and to permit disclosure to the specified entities only for the purposes specified in the statute." (*Jonon* v. *Superior Court* (1979) 93 Cal.App.3d 683, 693 [155 Cal.Rptr. 822].)

Protecting the identity of aid recipients is not inconsistent with providing some press access to juvenile court records; the records can be redacted to remove the identities of the aid recipients. We do not find in section 10850 a legislative intent for its confidentiality provisions to be used as a shield to hide from public scrutiny the functioning of publicly funded agencies. Moreover, as to the confidentiality of the minors' status as aid recipients, this purpose can no longer be served once a party, such as the Sacramento Bee, has learned the fact from another source. At that point, only the protective purpose of section 827 remains viable.

We conclude that section 827 gives the juvenile court authority to determine which petitioners may receive access to juvenile court records by court

order and to limit such access appropriately as the case requires. In the proper exercise of its discretion, the juvenile court may grant the press access to material in juvenile court records in dependency proceedings. We turn now to the factors the juvenile court should consider and the procedure it should employ in making the determination whether to grant a petition by the press for access to juvenile court records.

### III. *Procedure for Disclosure of Juvenile Court Records to Press*

The minors contend the juvenile court considered improper factors in deciding to grant the Sacramento Bee's petition, paying only lip service to the minor's best interests while instead focusing on its trust of the Sacramento Bee and a concern to protect the paper's sources. The minors further contend the juvenile court employed an improper procedure to implement the order. In particular, the minors object to the use of a temporary judge to review the records and make the actual disclosure without the presence of any other interested party or firm guidelines for disclosure from the juvenile court. We agree this novel procedure is inadequate to effect the proper balancing that must occur and to protect the interests of the minors and others. The juvenile court must conduct an in camera proceeding to determine what, if any, material may be disclosed to the press, similar to the procedure used in other instances where privileged or confidential information may be disclosed. Since this procedure may affect the court's decision whether to permit disclosure, we discuss both the factors the court should weigh and the procedure for determining and making any disclosure, and remand for further proceedings.

The juvenile court indicated it would follow the guidelines set forth in *San Bernardino County Dept. of Public Social Services* v. *Superior Court, supra,* 232 Cal.App.3d 188, in determining whether to permit press access. In *San Bernardino,* the court addressed the factors a juvenile court should consider in determining whether to permit media access to juvenile dependency hearings. "First, and foremost, the court's discretion must be directed at determining what is in the best interests of the minors, for that obviously is its primary concern at all times in the juvenile proceeding. At the same time, the court should give proper consideration to the important social values which are fostered by allowing public or press access to the proceedings." (*Id.* at p. 207.)

The court stated that in balancing these competing concerns, the juvenile court should look to the particular facts of the case and consider such factors as the age of the child, the nature of the allegations, the extent of publicity, and the effect of disclosure on the minor and on family reunification. (*San*

*Bernardino County Dept. of Public Social Services* v. *Superior Court, supra,* 232 Cal.App.3d at p. 207.) The juvenile court could also consider whether limited access was appropriate. (*Id.* at pp. 207-208.) The *San Bernardino* court concluded the juvenile court should allow press access to juvenile dependency proceedings "unless there is a reasonable likelihood that such access will be harmful to the child's or children's best interest." (*Id.* at p. 208.)

A broader balancing test, encompassing more interests, is set forth in rule 1423(b) of the California Rules of Court. The rule directs the juvenile court to balance the interests of the minors and other parties to the proceeding, the interests of the petitioner, and the interests of the public. Only information that is necessary and has substantial relevance to the legitimate need of the petitioner should be released. (Rule 1423(b).) This test more fully reflects the delicate balancing the juvenile court must undertake in deciding whether to grant the press access to juvenile court records in dependency cases.

The juvenile court must recognize the general policy of confidentiality and hold paramount the best interests of the minors. Confidentiality serves not only to protect the best interests of the minors, it also encourages full disclosure, by the minors and others, of all information necessary for proper functioning of the juvenile welfare system. At the same time, the juvenile court should accommodate, to the extent possible, the legitimate request by the press for information necessary to permit public awareness and monitoring of the juvenile welfare system. The juvenile court should consider whether disclosure of confidential information is necessary to accomplish this purpose, or whether adequate information can be obtained from other sources. Partial disclosure may be particularly appropriate to shield sensitive information not disclosed at the hearing. Finally, the juvenile court must recognize the freedom of the press. Once the press receives information lawfully, it cannot be restrained from reporting it. (*KGTV Channel 10* v. *Superior Court* (1994) 26 Cal.App.4th 1673, 1682 [32 Cal.Rptr.2d 181]; *San Bernardino County Dept. of Public Social Services* v. *Superior Court, supra,* 232 Cal.App.3d at p. 206.)

A petitioner seeking access to juvenile court records must first show good cause. (*Navajo Express* v. *Superior Court, supra,* 186 Cal.App.3d at p. 985; *In re Maria V., supra,* 167 Cal.App.3d at p. 1103.) The minor and other interested parties must be given notice and an opportunity to be heard. (*In re Michael B., supra,* 8 Cal.App.4th at p. 1706; see rule 1423(d) of Cal. Rules of Court [listing parties to be served].) Any conflict between competing interests can be resolved at an in camera hearing in which the juvenile court determines which material, if any, should be disclosed. (*Navajo Express,*

*supra*, at p. 986; *In re Maria V.*, *supra*, at p. 1103.) The juvenile court should make a record of its findings adequate for review of its ruling. (See *People v. Reber* (1986) 177 Cal.App.3d 523, 532 [223 Cal.Rptr. 139] [in camera procedure for release of privileged psychotherapy records].) If the juvenile court determines any portion of the records should be disclosed, it should then make appropriate orders specifying the information to be disclosed and the procedure for providing access. (Cal. Rules of Court, rule 1423(e).)

The in camera hearing is a necessary part of determining the cause presented by the petition; therefore, it can be conducted by a judge pro tempore only on stipulation of the parties. (Cal. Const., art. VI, § 21.) We recognize the in camera proceeding to review the juvenile court record to determine what, if any, material should be disclosed to petitioner may be cumbersome and time consuming for the juvenile court. This use of scarce judicial resources is a factor the court may consider in making its determination whether to disclose court records.

Since this procedure was not followed in this case, the matter must be remanded.

### DISPOSITION

The judgment (the June 1993 order and the June 1994 order) is reversed and the cause is remanded to the juvenile court for further proceedings in accordance with this opinion. The stay issued by this court on October 13, 1994, shall remain in effect until this opinion is final. The parties shall bear their own costs.

Puglia, P. J., and Sims, J., concurred.

On October 10, 1995, the opinion was modified to read as printed above.