Filed 9/22/16  P. v. Santiago CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FRANCIS SANTIAGO,<br><br>    Defendant and Appellant. | B264448<br><br>(Los Angeles County<br>Super. Ct. No. BA422525) |

APPEAL from a judgment of the Superior Court of Los Angeles County, C. H. Rehm, Judge.  Affirmed.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven E. Mercer and Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Francis Santiago appeals from the judgment entered following his conviction by jury for possession of cocaine, with court findings he suffered a prior felony conviction and prior felony convictions for which he served separate prison terms. (Health & Saf. Code, § 11350, subd. (a); Pen. Code, §§ 667, subd. (d), 667.5, subd. (b).) We affirm.

## FACTUAL and PROCEDURAL SUMMARY

1. *People's Evidence.*

   a.  Trial testimony prior to the Evidence Code section 402 admissibility hearing.

   According to the testimony of Los Angeles Police Officer Christabel Youssef, Youssef and her partner, Los Angeles Police Officer David Marroquin, were uniformed and working in a probation compliance unit with probation officer Gregory Jackson when the three officers drove to Sixth and San Julian in Skid Row about 10:45 a.m. on November 9, 2013. Youssef's job was to ensure the surroundings were safe (provide cover) while Marroquin spoke to a probationer on Sixth. As Youssef exited the police car, she saw appellant about four feet away from her, sitting in a wheelchair very near to Chad Peters and another man.

   While Marroquin talked to the probationer, Youssef stood in front of appellant. Several minutes later, appellant stood, revealing in the wheelchair seat a large plastic bindle with off-white solids resembling cocaine base. Youssef immediately observed the bindle. As appellant walked toward a nearby bicycle, Peters and the other man remained seated. After Youssef recovered the bindle from the wheelchair, she noticed, on an adjacent table, a razor with off-white residue resembling cocaine base sitting on top of a book cover.

   b.  Testimony during the Evidence Code section 402 admissibility hearing.

   To address the prosecution's objection to admission of a hearsay statement by Peters, the court conducted an Evidence Code section 402 admissibility hearing outside the presence of the jury. The issue was whether the spontaneous statement hearsay exception in Evidence Code section 1240 applied to Peters's statement, "It's all mine."

2

In response to questions from appellant's attorney, Youssef testified appellant was handcuffed when she advised him of his *Miranda*[1] rights but she did not recall whether, at that point, Peters was in handcuffs. Youssef explained that as she *Mirandized* appellant, the three officers were in the same common area, "We were all within . . . I would say 15, 20 feet of each other," and appellant was "answering." At that time, Peters yelled out, "It's all mine." Youssef explained she was not asking any questions of Peters when he "just blurted it out."

Answering questions from the prosecution, Youssef stated she saw the bindle on the wheelchair as soon as appellant stood but did not immediately let him know she had seen it and did not recall saying anything about the bindle in the presence of Peters. Youssef testified that she believed Jackson was with Peters when he said, "It's all mine" and that she was closer to appellant. Youssef *Mirandized* Peters at the scene, and asked Peters about his statement, "It's all mine." Peters told her "everything that was found was his," identifying as his the book cover, the razor on top of the book cover, and the off-white solids (in rolled smoking paper) in his pocket. Peters did not identify the bindle on the wheelchair or Crazy Glue bottles found on appellant's person. After Peters identified his items, Youssef asked him, "Are you sure?" and Peters answered yes.

After hearing argument from counsel, the trial court excluded Peters's statement as inadmissible hearsay, noting there was no evidence Peters said, "It's all mine" under stress and nothing to demonstrate Peters did not have time to fabricate the statement. Having heard the evidence Peters was referring to the book cover, razor, and off-white substances rather than the items appellant allegedly possessed, the court excluded the statement under Evidence Code section 352, determining the statement was likely to confuse the jury.

c. Trial testimony after the Evidence Code section 402 admissibility hearing.

After the admissibility hearing, Youssef testified the adjacent table was within two feet of appellant, and Peters and the other man were sitting right next to appellant in a

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].

somewhat triangular configuration with Peters closer to the wall of a building.[2] The other man had a cylindrical glass pipe in one hand and a metal rod in the other.

After Youssef told appellant to stand by and not to leave, Jackson searched appellant, finding two Crazy Glue bottles, one of which contained four bindles, each of which contained an off-white solid resembling cocaine base. Jackson also found cash in appellant's possession, i.e., $173, consisting of five $20 bills, one $10 bill, two $5 bills, and fifty-three $1 bills. When Jackson searched Peters, Jackson found a rolled piece of paper containing off-white solids resembling cocaine base in Peters's left front pocket. In response to a hypothetical question based on evidence, Youssef testified she "would be strongly leaning towards forming the opinion that [appellant] was in possession of those narcotics for purposes of sales." During cross-examination, Youssef said that once appellant stood, she never took her eyes off the wheelchair, she never saw anyone reach over, and it was not possible anyone tossed the narcotics on the wheelchair.

Jackson and Marroquin provided testimony corroborating the events described in Youssef's testimony. A police criminalist confirmed one of the glue bottles contained cocaine base and the bindle in the wheelchair consisted of seven bindles containing 2.21 grams net weight of cocaine base.

2. *Defense Evidence.*[3]

Appellant testified there was nothing on the wheelchair where he had been sitting and he did not possess drugs that day. Appellant told the jury Youssef lied when she claimed to have found something in the wheelchair. Although appellant admitted he had glue bottles on his person, he averred they both contained glue and did not contain any

---

[2]     Youssef testified during cross-examination appellant and the two people with him were in a triangular configuration "[s]o Mr. Peters was slightly behind him to his left, and . . . the third male was almost parallel to him to his left."

[3]     The jury was impaneled on June 16, 2014. On June 23, 2014, soon after the defense began to present evidence, the court granted appellant's motion to represent himself and he represented himself at all times thereafter.

cocaine before police took possession of them. Appellant admitted possessing cash, including fifty-three $1 bills, but provided an innocent explanation why he had them.

On cross-examination, appellant admitted having suffered two felony burglary convictions on January 12, 2006, and March 20, 2008, respectively, and an April 14, 2011 felony grand theft conviction.

3. *Rebuttal Evidence.*

In rebuttal, Youssef testified that after she noticed cocaine base residue on appellant's left hand, he admitted to her the narcotics found on his person were for personal use.

## ISSUES

Appellant claims the trial court erroneously excluded Peters's statement, "It's all mine." Appellant also claims the trial court abused its discretion by denying his request for permission to withdraw his waiver of his right to a jury trial on the prior conviction allegations.

## DISCUSSION

1. *The Trial Court Properly Excluded Peters's Statement.*

Appellant claims the trial court erred by ruling the Evidence Code section 1240 spontaneous statement hearsay exception[4] did not apply to Peters's statement and by excluding the statement under Evidence Code section 352.[5] We reject appellant's claim.

---

[4]     Evidence Code section 1240, states, "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception." Evidence Code section 170, states, " 'Perceive' means to acquire knowledge through one's senses."

[5]     Evidence Code section 352, states, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

"The admissibility requirements for [spontaneous statements] are well established. ' "(1) [T]here must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it." [Citations.]' [Citation.]  A statement meeting these requirements is 'considered trustworthy, and admissible at trial despite its hearsay character, because "in the stress of nervous excitement, the reflective faculties may be stilled and the utterance may become the instinctive and uninhibited expression of the speaker's actual impressions and belief." [Citation.]' [Citation.]" (*People v. Merriman* (2014) 60 Cal.4th 1, 64 (*Merriman*).)

"Whether an out-of-court statement meets the statutory requirements for admission as a spontaneous statement is generally a question of fact for the trial court, the determination of which involves an exercise of the court's discretion.  [Citation.]  We will uphold the trial court's determination of facts when they are supported by substantial evidence and review for abuse of discretion its decision to admit evidence under the spontaneous statement exception.  [Citations.]" (*Merriman, supra,* 60 Cal.4th at p. 65.) An appellate court applies an abuse of discretion standard of review to a trial court ruling on an Evidence Code section 352 issue.  (*People v. Waidla* (2000) 22 Cal.4th 690, 724.)

Aside from Peters's presence in an area where a probationer and appellant were speaking to the uniformed officers, there was no evidence presented at the Evidence Code section 402 hearing Peters was experiencing stress when he blurted out, "It's all mine." No one was speaking to Peters when he made the statement.  There is no evidence that when he made the statement he was handcuffed or saw the bindle on the wheelchair.[6] While Peters's presence among uniformed officers with his own narcotics on a nearby

---

[6] Youssef testified the three men were sitting in a triangular fashion with appellant facing the street and Peters closest to the building, suggesting Peters was slightly behind appellant with an obstructed view of any narcotics in the wheelchair.

table might give rise to an inference he was experiencing some degree of stress, that inference was undermined by substantial evidence Peters had an opportunity for reflection and fabrication. Prior to the admissibility hearing, Youssef testified she was standing in front of appellant for several minutes before appellant stood from the wheelchair. She spent additional time ordering appellant to stop, and *Mirandizing* him, before Peters made his statement. We therefore conclude the court did not abuse its discretion in determining, based on the lapse of time, the spontaneous statement hearsay exception did not apply.

We also conclude no abuse of discretion occurred in the court's determination the statement should be excluded under Evidence Code section 352. After Peters was *Mirandized*, he specified what was his: the book cover, the razor on top of the book cover, and the off-white solids Peters had in his pocket. Peters did not claim the bindle found in appellant's wheelchair or the glue bottles in appellant's possession belonged to Peters. As there was no evidence supporting an inference his statement, "It's all mine," had anything to do with the items found in appellant's possession, the statement had little probative value and posed a significant danger of misleading or confusing the jury.[7]

Even if the trial court had erred by excluding the challenged statement, we would not reverse the judgment. As recounted above, the People's evidence against appellant was quite strong and the jury reasonably could have rejected, as fabrication, appellant's story suggesting all police witnesses lied and police planted the narcotics in the wheelchair and in the glue bottles found in his possession. With Peters in possession of his own narcotics and the razor and residue in plain view on a nearby table, and no

---

[7] Appellant argues the fact Peters's statement was "against [Peters's] penal interests" provides a particularized guarantee of trustworthiness or indicum of reliability. We do not understand this to be a claim Evidence Code section 1230 applies to the statement and we reject any such claim because it is perfunctory and undeveloped, without supporting argument or authority, and not made under a separate heading in appellant's brief. (Cf. *People v. Jones* (1998) 17 Cal.4th 279, 305; *People v. Carroll* (2014) 222 Cal.App.4th 1406, 1412, fn. 5; *In re Keisha T.* (1995) 38 Cal.App.4th 220, 237, fn. 7.)

evidence Peters knew anything about the bindle in the wheelchair or the narcotics in appellant's pockets, there is no reasonable probability the jury would have interpreted "It's all mine" to be a claim of ownership of the items found in appellant's possession. At best, it proved a joint possession by appellant and Peters. We therefore conclude any error in excluding the challenged statement was not prejudicial and did not violate defendant's right to due process. (Cf. *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*); *People v. Fudge* (1994) 7 Cal.4th 1075, 1102-1103.)

2. *The Trial Court Properly Denied Appellant's Motion to Withdraw His Waiver of His Right to a Jury Trial on the Prior Conviction Allegations.*

The information filed April 15, 2014, alleged as to count 1 appellant possessed cocaine base for sale (Health & Saf. Code, § 11351.5) and suffered a 1986 conviction (case No. SCR-43355) for purposes of Penal Code section 1170, subdivision (h)(3) and the Three Strikes law. The information also alleged as to count 1 appellant suffered seven prior felony convictions for which he served separate prison terms for purposes of Penal Code section 667.5, subdivision (b).[8] At appellant's April 15, 2014 arraignment, he pled not guilty and denied the prior conviction allegations.

On June 23, 2014, the jury retired to deliberate on count 1. On June 24, 2014, during jury deliberations, the court asked appellant whether he wanted to admit the prior conviction allegations or wanted a jury or court trial on those allegations. Appellant replied he would "rather have the court to make that consideration" and indicated he wanted a court trial on the prior conviction allegations (hereafter, court trial) and at least a week to prepare. Appellant later expressly waived his right to a jury trial on the prior conviction allegations. On June 24, 2014, the jury acquitted appellant on count 1 but convicted him of possessing cocaine as a lesser included offense, and the court discharged the jury. Appellant indicated he needed time to prepare for the court trial. The court subsequently continued the court trial several times.

---

[8] The prior convictions alleged were two 2006 convictions (each under case No. BA295795), a 2006 conviction (case No. BA309404), a 2008 conviction (case No. BA333969), and three 2011 convictions (each under case No. SA073814).

8

On January 5, 2015, the court stated, "we're here for a pretrial conference day zero of 20 concerning [appellant's] court trial on his priors" and "to consider [appellant's] [intended but not yet filed] motion for a new trial." After the court denied appellant's request to delay, until after the hearing on his new trial motion, the court trial and the prosecution's motion to have him fingerprinted, appellant complained the court was abusing its power.

The court acknowledged appellant's position but stated, "The court has made its ruling." Appellant interrupted, asking the court "to take back my waiver of jury trial and let a jury decide the priors, withdraw that waiver." The court initially stated, "We can certainly do that, but we will have a jury here to consider," but after the prosecution objected appellant had "waived his right to that," the court agreed and ruled "[appellant's] request to withdraw your jury trial waiver is denied."

Appellant's February 19, 2015 motion to withdraw his waiver of his right to a jury trial on the prior conviction allegations accused the prosecutor of misleading him in a malicious attempt to sabotage his defense by telling him the jury was exhausted and it would be best to release the jury from the trial on the prior conviction allegations. On February 20, 2015, the court denied the written motion and proceeded to conduct the court trial.

To prove the existence of the priors, the People presented (1) an employee in the priors unit of the district attorney's office who testified to documentary evidence reflecting the prior convictions, (2) a police fingerprint identification expert who testified appellant's fingerprints were on various portions of the documentary evidence, and (3) the supporting documentary evidence.[9] Appellant did not challenge the sufficiency of the evidence by presenting counter evidence or argument. Instead, appellant reiterated

---

[9] The documentary evidence consisted of a Los Angeles Police Department fingerprint card bearing fingerprints and appellant's name, certified documents from the Department of Justice bearing appellant's name and alias, certified documents from the Department of Corrections bearing appellant's name, a CLETS report bearing appellant's name and alias, and a criminal complaint, and probation report, bearing appellant's alias.

his position the nonjury trial violated his Fourteenth Amendment rights. The court found appellant suffered the alleged prior convictions. On March 16, 2015 the court denied appellant's new trial motion.[10]

Appellant claims the trial court abused its discretion by denying his request to withdraw his jury trial waiver. We reject the claim. "It is well established that a waiver of a jury trial, voluntarily and regularly made, cannot afterward be withdrawn except in the discretion of the court. [Citations.] Absent special circumstances the court may deny a motion to withdraw such a waiver especially where adverse consequences will flow from the defendant's change of mind. In exercising its discretion the court may consider such matters as the timeliness of the motion to withdraw the waiver, the reason for the requested withdrawal and the possibility that undue delay of the trial or inconvenience to witnesses would result from granting the motion." (*People v. Chambers* (1972) 7 Cal.3d 666, 670-671.) We review a trial court's denial of such a motion for abuse of discretion. (*Id.* at p. 671.)

Appellant's trial on the prior conviction allegations presented two factual issues: whether the prior convictions occurred, and whether appellant was the person who suffered them. (*People v. Epps* (2001) 25 Cal.4th 19, 23-25 (*Epps*); Pen. Code, § 1025, subds. (b) & (c).) Although Penal Code section 1025 guarantees a right to a jury trial on the first issue, the trial court, rather than the jury, decides the identity issue. (*Epps*, at pp. 23-27; Pen. Code, § 1025, subd. (c).) Appellant was therefore never entitled to a jury trial as to identity.

To the extent appellant may have been entitled to a jury trial on whether the prior convictions occurred, we conclude the court did not abuse its discretion by refusing to allow appellant to withdraw his waiver. There is no dispute on June 24, 2014, appellant expressly and validly waived his right to a jury trial on the prior conviction allegations. On June 24, 2014, appellant also agreed the court trial would proceed on July 3, 2014.

---

[10] Appellant does not challenge the validity of the court's denial of the new trial motion.

The record reveals the court continued the court trial multiple times[11] while appellant sought and obtained discovery and asked for time to file written opposition to the court trial. That opposition (appellant's January 5, 2015 "Motion to Challenge and Dismiss Invalid Prior Strike Allegation") did not request a withdrawal of his waiver. It was only after the court denied two requests for continuances on January 5, 2015,[12] that appellant verbally "ask[ed] the court to take back [his] waiver of jury trial and let a jury decide the priors, withdraw that waiver."

Setting a jury trial and impaneling a jury would have inevitably delayed the proceedings. Based on appellant's multiple requests for continuances on January 5, 2015, and his conduct throughout 2014,[13] there is a strong inference appellant's motivation was to delay the proceedings. The fact appellant said nothing on January 5, 2015, about the prosecutorial misconduct advanced as the sole justification in his written February 19, 2015 motion to withdraw his waiver is further evidence his only purpose at the January hearing was to delay the proceedings. We conclude the trial court did not abuse its discretion by denying appellant's oral and written requests to withdraw his waiver of his right to a jury trial on the prior conviction allegations.

---

[11] The court continued the court trial to August 20, 2014, and then to November 18, 2014. On November 18, 2014, appellant requested and obtained a third continuance to January 5, 2015, in order to file written opposition to the court trial. On January 5, 2015, the court continued the court trial, ultimately to February 20, 2015.

[12] The court denied appellant's request to continue the prosecution's motion to fingerprint him and his request to hold the court trial after the motion for new trial.

[13] As early as October 24, 2014, the court admonished appellant he was wasting time. Responding to appellant's complaints about not having copies of various materials on January 5, 2015, the court reiterated its concern: "it is becoming more apparent . . . that you are engaged in a delaying process. You don't do the things that you are required to do and expect more time essentially not to get them done [even though] [t]here is nothing wrong with your intellect as reflected in the motions that you filed."

11

Even if the trial court abused its discretion, it does not follow we must reverse the true findings on the prior conviction allegations. There is no constitutional right to a jury trial on prior conviction allegations; the right is statutory only. (*People v. Cross* (2015) 61 Cal.4th 164, 172; *People v. Vera* (1997) 15 Cal.4th 269, 276-277.) We evaluate the alleged error under the *Watson* standard. (*Epps, supra,* 25 Cal.4th at pp. 29-30.)

We note that in response to questions from the prosecution at appellant's jury trial for cocaine possession, appellant admitted to two felony burglary convictions in 2006 and 2008, respectively, and a 2011 felony grand theft conviction. Had a jury been impaneled, the only factual issue for it to decide would have been whether the prior convictions occurred. In the court trial, the prosecution's evidence that all of the priors occurred was strong as the witnesses authenticated official government records, many certified, that clearly established the prior convictions. Appellant meanwhile declined to cross-examine the prosecution witnesses or offer evidence or argument challenging the fact the prior convictions occurred. We therefore conclude appellant did not suffer any prejudicial error resulting from the determination by the court, rather than a jury, that his prior convictions occurred. (*Epps, supra,* 25 Cal.4th at pp. 29-30.)

*DISPOSITION*

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HOGUE, J.[*]

We concur:

EDMON, P. J.

ALDRICH, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.