* This opinion is ordered to be published with the exception of the section entitled The Visitation Order and section I of the Discussion.
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 445 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 446 
OPINION
Jayne D. and her husband, Jerry D., appeal the juvenile court's orders barring them from disseminating confidential case documents and terminating dependency jurisdiction over Jayne's twin children, Tiffany G. and Tony G. III (Tony). Jayne contends the termination order is fatally vague concerning visitation and the nondissemination order is in excess of jurisdiction and contrary to statute. Jerry also challenges the nondissemination order. We affirm.
 BACKGROUND
Tiffany and Tony were born on June 1, 1984, to Jayne and her husband, Tony G. II (Tony II). After Jayne and Tony II divorced, the children apparently lived with Jayne. In October 1988, Jayne married Jerry. In June 1990, the children began therapy after Jayne and Jerry reported they had acted out sexually and disclosed that their maternal grandparents and cousins had molested them. In October 1990, after Tiffany and Tony were placed in foster care, they revealed Jayne and Jerry had sexually molested them and forced them to identify their maternal grandparents and cousins as the perpetrators. On November 20, 1990, the juvenile court declared the children dependents due to sexual abuse. It detained and then placed them with their father in Iowa at a confidential address.
 THE NONDISSEMINATION ORDER
According to the social worker's January 20, 1994, review report, in October 1993 Jayne and Jerry told the child abuse unit of the San Diego County Sheriff's Department that the maternal grandparents had molested Tiffany and Tony. After a new investigation the case was closed. At some point, Jayne and Jerry mailed packets of materials to numerous people in California and Iowa. These packets included copies of various juvenile court reports, a social study, a review report, psychological evaluations of Tiffany and Tony, and evidentiary interview reports concerning the children. The social worker said: "Such action is extremely demeaning to Tiffany and Tony and violates these children's sense of privacy, if not rights of privacy. These actions by the mother and stepfather would certainly be emotionally damaging to the minors if the minors knew of their occurrence. I appeal to the court to take any action possible to protect these minors from continued abuse in this way."
At the January 20, 1994, review hearing, Jayne's attorney furnished the court what he represented was a copy of the disseminated materials. The *Page 448 
court described the packet as containing confidential documents including psychological evaluations, reports prepared by the department of social services, and a report prepared by children's hospital. The court read and considered the January 20, 1994, review report. It stated:
"I'm going to inform you that all documents generated from the dependency action in this case around these two kids generated by the department, generated by agencies with whom the Department works in doing their efforts are confidential. They're confidential by California statute.
"Now, you, mom, you get to see them because you're mom, because you're a party to this action; and it wouldn't be fair for you not to know what we're talking about. But the confidentiality extends to you and not beyond you to family, friends or other professionals who are not directly involved in the dependency process.
"And as far as stepfather is concerned, the . . . confidentiality does not even extend to you and certainly does not authorize you to distribute the materials anywhere else.
"Now, the order I'm going to issue to the two of you is that you are ordered not to distribute confidential materials generated as part of this dependency process to anyone, period."
Jerry then inquired: "How about the grand jury?" The court responded:
"You are not to distribute them to anyone. If the grand jury wants them, the grand jury has a way to get them. They don't have to go through you for it. You, particularly, Mr. [D.], aren't supposed to have them in the first place; so you're not supposed to have them. You're not supposed to give them.
"Mom, you don't give them to the grand jury."
The court explained violation of its order would constitute contempt of court, with each violation punishable by up to five days in custody. Jayne said she understood. After a lengthy protest by Jerry and further explanation by the court, the court found he understood the order.
 THE VISITATION ORDER*
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Page 449 
 DISCUSSION I*
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 II
Jayne contends the nondissemination order is in excess of jurisdiction and contrary to Welfare and Institutions Code[3]
section 827, subdivision (a). Jerry asserts Jayne was entitled to receive the records and disclose them to him. He argues she is a holder of a privilege with respect to the records, entitling her to waive the privilege and allow him to inspect them.[4] He further asserts the nondissemination order is an invalid prior restraint, a violation of his First Amendment rights, overbroad, unsupported by substantial evidence, preempted by state law, lacking in statutory authority, and not narrowly drawn to protect Tiffany and Tony.
Section 827, subdivision (a) provides in pertinent part:
"[A] petition filed in any juvenile court proceeding, reports of the probation officer, and all other documents filed in any such case or made available to the probation officer in making his or her report, or to the judge, referee, or other hearing officer, and thereafter retained by the probation officer, judge, referee, or other hearing officer, may be inspected only bycourt personnel, the district attorney, a city attorney or city prosecutor authorized to prosecute criminal or juvenile cases under state law, the minor who is the subject of the proceeding,his or her parents or guardian, the attorneys for the parties, and any other person who may be designated by court order of the judge of the juvenile court upon filing a petition therefor. . ..
". . . . . . . . . . . . . . . . . . . . . . . . . . . .
"Any records or reports relating to a matter within the jurisdiction of the juvenile court prepared by or released by the court, a probation department, or the county department of social services, any portion of those records or reports, and information relating to the contents of those records or reports, shall not be disseminated by the receiving agencies to any persons or agencies, other than those persons or agencies authorized to receive documents pursuant to this section. Further, any of those records or reports, any *Page 450 
portion of those records or reports, and information relating to the contents of those records or reports, shall not be made attachments to any other documents without the prior approval of the presiding judge of the juvenile court, unless they are used in connection with and in the course of a criminal investigation or a proceeding brought to declare a person a dependent child or a ward of the juvenile court."[5] (Italics added.)
(1a) Jayne and Jerry argue while section 827, subdivision (a) limits the ability of authorized agencies to disseminate juvenile court records, there is no specific corresponding statutory limitation on the right of a parent to do so. Thus, they argue, as the statute does not specifically name them as parties who may not disseminate juvenile court documents, they are free to do so.
We think this is too narrow a reading of the statute, and in particular it ignores the need to read together all of the statutes on this subject so as to determine the legislative intent. (Freedom Newspapers, Inc. v. Orange County EmployeesRetirement System (1993) 6 Cal.4th 821, 828 [25 Cal.Rptr.2d 148,863 P.2d 218].) Under this broader approach, we reject the argument.
To begin with, the documents here at issue, pursuant to the specific language of section 827, subdivision (a) "may be inspected only by court personnel . . . the minor . . . [and] his or her parents or guardian. . . ." (Italics added.) Thus the specific prohibition on disclosure by government agencies need not be repeated with respect to persons, as those individuals are already necessarily precluded from any such disclosure by the limitations on access to the material in question which are set out above.
Also, in the next paragraph, section 827, subdivision (b), the Legislature "reaffirms its belief that juvenile court records, in general, should be confidential." (§ 827, subd. (b)(1) [exception for cases involving serious acts of violence].) Thus, reading section 827, subdivision (a) together with section 827, subdivision (b) compels rejection of the contrary argument advanced herein. *Page 451 
Furthermore, we are obliged to hold paramount Tiffany's and Tony's best interests (In re Mary S. (1986) 186 Cal.App.3d 414, 418-419 [230 Cal.Rptr. 726]) and consider the dependency law's objective of protecting them (In re Marilyn H. (1993) 5 Cal.4th 295, 307 [19 Cal.Rptr.2d 544, 851 P.2d 826]). While Jayne has access to the juvenile court's records, to allow her to disseminate them to anyone she pleases would stand the confidentiality principle on its head, and disserve rather than support the principle of confidentiality.[6] (Cf. Bank of SanPedro v. Superior Court (1992) 3 Cal.4th 797, 804 [12 Cal.Rptr.2d 696, 838 P.2d 218].)
Moreover, Jayne and Jerry's circulation of these records seems nothing short of callous and cruel. In light of the trauma and fear of Jayne and Jerry that the children continue to experience, allowing the dissemination of these records can only be viewed as likely to compound their suffering.
(2) "[T]here exists in this state a strong public policy protective of the confidentiality of juvenile court records and proceedings." (Foster v. Superior Court (1980) 107 Cal.App.3d 218, 228 [165 Cal.Rptr. 701].) The juvenile court has the authority to determine the extent to which its files are released and "has the inherent right to control the time, place and manner of inspection." (Lorenza P. v. Superior Court (1988)197 Cal.App.3d 607, 610-611 [242 Cal.Rptr. 877] [mother (accused of murdering her daughter) and mother's counsel can inspect child protective services documents concerning the victim and mother's other child]; T.N.G. v. Superior Court (1971) 4 Cal.3d 767, 778, 781 [94 Cal.Rptr. 813, 484 P.2d 981] [confidentiality protects juveniles from having to disclose their arrest and detention records to employers or other third parties]; Wescott
v. County of Yuba (1980) 104 Cal.App.3d 103, 106-109 [163 Cal.Rptr. 385] [relying on T.N.G. v. Superior Court, supra].)
In exercising its authority, the juvenile court must make the children's best interests its primary concern. (San BernardinoCounty Dept. of Public Social Services v. Superior Court
(1991) 232 Cal.App.3d 188, 207 [283 Cal.Rptr. 332] [section 346 authorizes juvenile court to admit press to dependency proceedings]; In re Maria V. (1985) 167 Cal.App.3d 1099, 1103 [213 Cal.Rptr. 73].) "[T]he constitutionally protected public right of access to trials and pretrial proceedings in criminal cases does not extend to juvenile dependency proceedings." (SanBernardino County Dept. of Public Social Services v. SuperiorCourt, supra, 232 Cal.App.3d at p. 192.)
(1b) Here, the court's order that Jayne and Jerry not circulate confidential information was well within its authority and was aimed at protecting *Page 452 
Tiffany and Tony. Jayne argues "unless expressly prohibited by statute, or unless the publication prohibited by the court is of a nature to obstruct or embarrass the court in its administration of the law and the execution of its powers, the public has a right to know, discuss, and publish all judicial proceedings." Be that as it may, allowing Jayne and Jerry to circulate at will confidential documents in the juvenile court file would clearly undermine the court's efforts to protect the children and promote their best interests.
(3) Nor was the juvenile court's order an invalid prior restraint or a violation of Jerry's First Amendment rights. As he notes, the juvenile court lacks "the power to restrict the press's right to investigate and publish information which it has lawfully obtained." (San Bernardino County Dept. of PublicSocial Services v. Superior Court, supra, 232 Cal.App.3d at p. 206.)
Presumably, Jerry obtained from Jayne the juvenile court documents at issue here. Assuming this means he obtained them lawfully (a questionable assumption given the statute's language), it does not invalidate the nondissemination order. The order here in no way prohibits Jerry from expressing his views on the dependency proceeding to the grand jury or anyone else. It merely prevents him from circulating confidential documents which contain not Jerry's thoughts and expressions, but rather those of Tiffany and Tony, their therapist, the social workers, and the other professionals involved in caring for the children.
Furthermore, even assuming the nondissemination order does in some way implicate Jerry's right to free speech, disclosure of the confidential materials infringes upon Tiffany's and Tony's constitutionally protected privacy right. (Cal. Const., art. I, § 1.) Jerry has failed to demonstrate an interest superior to that of the children. He does not deny that the grand jury can obtain any information it needs without his aid. Moreover, the order does not prevent Jerry from asking the grand jury to seek the information itself, nor does it prevent any persons authorized to receive confidential material from doing so. Finally, to the extent that Jerry seeks to refute "lies" and to defend himself and Jayne, the order does not prevent him from doing so. It merely proscribes the dissemination of confidential juvenile court documents.
(4) Jerry asserts the nondissemination order is overbroad because it prohibits disclosure to persons entitled to receive the confidential documents, such as law enforcement agencies and child abuse investigation teams. As Jerry has no right to receive the documents in the first place, he has no right to give them to anyone else, including persons statutorily authorized to receive the documents without his assistance. We also reject Jerry's claim the order was not narrowly drawn to protect Tiffany and Tony. *Page 453 
As noted above, it cannot be gainsaid that Jayne and Jerry's circulation of confidential juvenile court documents harms the children.
(5) Finally, Jerry maintains the nondisclosure order is void because state law preempts it. He argues while section 827, subdivision (b)(2) provides an intentional violation of the section's confidentiality provisions constitutes a misdemeanor punishable by a fine not to exceed $500, the juvenile court attempted to make a violation of the section punishable by the greater penalty for contempt of court. Again we disagree. The punishment specified in section 827 is for violation of the section itself with no requirement of a prior court order. A violation of an order of the juvenile court, on the other hand, is clearly punishable as contempt. In any case, even if the court here had erred in stating a violation of its order was punishable as contempt, this does not render the nondissemination order invalid. It merely limits the punishment available for violation of the order.
(1c) The juvenile court did not abuse its discretion in making the nondissemination order.
 DISPOSITION
Order affirmed.
Todd, Acting P.J., and Benke, J., concurred.
Appellants' petition for review by the Supreme Court was denied December 22, 1994.
* See footnote, ante, page 443.
[3] All statutory references are to the Welfare and Institutions Code.
[4] Jerry confuses the concepts of privilege with those of confidentiality. At issue here is the confidentiality of documents in the dependency court's file.
[5] California Rules of Court, rule 1423(b) states: "Only those persons specified in sections 827 and 828 may inspect juvenile court records without authorization from the court. Juvenile court records may not be obtained or inspected by civil or criminal subpoena. Authorization for any other person to inspect, obtain, or copy juvenile court records must be ordered by the juvenile court presiding judge or a judicial officer designated by the juvenile court presiding judge."
Section 828, subdivision (a) provides in pertinent part: "[A]ny information gathered by a law enforcement agency relating to the taking of a minor into custody may be disclosed to another law enforcement agency, including a school district police or security department, or to any person or agency which has a legitimate need for the information for purposes of official disposition of a case. . . ."
[6] We note section 346 bars the public from juvenile court hearings without the minor's consent, although the judge may "admit such persons as he deems to have a direct and legitimate interest in the particular case or the work of the court." *Page 454