[No. F036066. Fifth Dist. June 1, 2001.]

AMY L. PACK et al., Plaintiffs and Appellants, v.
KINGS COUNTY HUMAN SERVICES AGENCY, Defendant and
Respondent.

· COUNSEL

Richard B. Isham for Plaintiff and Appellant Amy L. Pack.

Dietrich, Glasrud, Mallek & Aune, Donald H. Glasrud and Peter G. Fashing for Plaintiff and Appellant The McClatchy Company.

Denis A. Eymil, County Counsel, and Jeanette Cauble, Deputy County Counsel, for Defendant and Respondent.

OPINION

**DIBIASO, Acting P. J.**—We address the construction and application of Welfare and Institutions Code section 827, subdivision (a)(2), which deals with the public disclosure of the juvenile records of deceased dependent minors. We hold that (1) redaction, from the records pertaining to a deceased child, of information about a living child is not the sole statutory means by which the juvenile court may protect the interests of the living child; (2) a finding by the juvenile court that disclosure of information relating to the deceased child is "detrimental to the safety, protection, or physical, or emotional well-being of" (*ibid.*) a living child is sufficient to justify withholding some or all of the information about to the deceased child and implies a finding that redaction would be insufficient to protect the interests of the living child; (3) substantial evidence is the proper standard for the review of such express and implied findings by the juvenile court; and (4) the juvenile court's order in this case refusing to release any information about the deceased child is supported by substantial evidence.

## SUMMARY OF FACTS AND PROCEEDINGS BELOW

On February 10, 2000, Jaime M., a minor and a dependent child under the provisions of Welfare and Institutions Code section 300,[1] died while in the care of a foster mother.[2] The foster mother was later charged with the murder of Jaime.

On March 7, 2000, appellant Amy L. Pack, publisher of the Visalia Times Delta, filed a petition in Kings County Superior Court for disclosure pursuant to section 827, subdivision (a)(2) (the subdivision or subdivision (a)(2)), of "all juvenile case files pertaining to" Jaime M. The petition was summarily denied on the same date. Pack then filed a request for reconsideration, citing recent amendments to subdivision (a)(2). On March 27, appellant The McClatchy Company, doing business as The Fresno Bee (McClatchy), filed a similar petition for access to Jaime's juvenile court files; this petition was amended on March 29. McClatchy sought disclosure of all Jaime's juvenile

---

[1] All further references are to the Welfare and Institutions Code unless otherwise noted.

[2] A sealed copy of the juvenile court file pertaining to Jaime M. was filed with this court on November 9, 2000. Appellants have requested that we take judicial notice of that file. We will do so.

court records covered by section 827, subdivision (e) and California Rules of Court, rule 1423(a).[3]

A hearing on both press petitions was set for April 19, 2000. On April 12, 2000, the California Department of Social Services (Department) moved for permission to file opposition, under seal, to the petitions for disclosure. This motion was denied. No written opposition or objection to either petition was filed by the Department or by any other person or entity.

At the hearing on the petitions, respondent Kings County Human Services Agency (HSA), the Department, both parents, and a court appointed advocate for Jaime appeared and orally objected to any disclosure of Jaime's juvenile records. The juvenile court considered the arguments of the parties and approved the parties' agreement that the court review the records in camera. The court performed the review and then, on May 9, 2000, denied both press petitions. The court found that release of any information from Jaime's files "would be detrimental to the safety, protection, physical, or emotional well-being of another child who is directly or indirectly connected to the juvenile case." (§ 827, subd. (a)(2).)

Both McClatchy and Pack subsequently asked the court to make additional findings explaining why appropriate redaction of Jaime's records would not adequately protect the interests of the other child. The court did not respond and took no further action on the petitions.

■■■■■ On July 5, 2000, Pack filed her timely notice of appeal from the order denying her petition.[4] On July 6, 2000, McClatchy filed its timely notice of appeal. Only HSA is participating as a respondent on these appeals.[5]

---

[3]Rule 1423(a), in part describes documents not described in section 827. Our references to "file(s)" or "record(s)" will encompass all documents identified in both the rule and the section.

[4]The petition for review of juvenile court records is a special proceeding on a collateral matter. (*In re Keisha T.* (1995) 38 Cal.App.4th 220, 229 [44 Cal.Rptr.2d 822].) An order denying the petition is appealable as a final judgment in a special proceeding. (*Ibid.*)

[5]HSA has chosen to furnish this court with neither argument nor authority on any of the issues raised by appellants, except with respect to the proper standard of review. As to all other issues, HSA has expressed its desire to remain "neutral." "Although it is the appellant's task to show error, there is a corresponding obligation on the part of the respondent to aid the appellate court in sustaining the judgment. '[I]t is as much the duty of the respondent to assist the [appellate] court upon the appeal as it is to properly present a case in the first instance, in the court below.' [Citations.]" (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 612, p. 644.) Given the considerable legal, factual and policy issues implicated by a request for disclosure of juvenile case files, we cannot fathom why HSA had no interest in presenting its

## DISCUSSION

### I.

Appellants "suggest" that redaction was the "required remedy" under subdivision (a)(2). We understand appellants to mean that redaction was the only tool available to the juvenile court to protect information pertaining to any child other than Jaime, and consequently, the juvenile court was without power to deny appellants all access to Jaime's records.

Section 827 sets the current parameters of this state's policy with respect to the confidentiality of juvenile records and governs the release of such records. (*In re Keisha T., supra,* 38 Cal.App.4th 220; see also *T.N.G. v. Superior Court* (1971) 4 Cal.3d 767, 778 [94 Cal.Rptr. 813, 484 P.2d 981]; *In re Tiffany G.* (1994) 29 Cal.App.4th 443, 451 [35 Cal.Rptr.2d 8]; *In re Michael B.* (1992) 8 Cal.App.4th 1698, 1706 [11 Cal.Rptr.2d 290]; *Lorenza P. v. Superior Court* (1988) 197 Cal.App.3d 607, 610-611 [242 Cal.Rptr. 877]; *Navajo Express v. Superior Court* (1986) 186 Cal.App.3d 981, 985 [231 Cal.Rptr. 165].) The juvenile court has both "the sensitivity and expertise" to make decisions about access to juvenile records and is in the best position to consider any other statutes or policies which may militate against access. (*In re Maria V.* (1985) 167 Cal.App.3d 1099, 1103 [213 Cal.Rptr. 733]; *In re Keisha T, supra,* 38 Cal.App.4th at pp. 229-230; *T.N.G. v. Superior Court, supra,* 4 Cal.3d at pp. 778, 781.)

Subdivision (a)(2), which concerns the records of deceased dependents, was amended in 1999. As so amended, it states: "Notwithstanding any other law and subject to subparagraph (A) of paragraph (3) [which is not pertinent to this appeal], juvenile case files, except those relating to matters within the jurisdiction of the court pursuant to Section 601 or 602, which pertain to a deceased child who was within the jurisdiction of the juvenile court pursuant to Section 300, shall be released to the public pursuant to an order by the juvenile court after a petition has been filed and interested parties have been afforded an opportunity to file an objection. Any information relating to another child or which could identify another child, except for information about the deceased, shall be redacted from the juvenile case file prior to release, unless a specific order is made by the juvenile court to the contrary. Except as provided in this paragraph, the presiding judge of the juvenile

position concerning the construction and application of section 827, in general and in this case in particular, or the propriety of the juvenile court's decision. Though preservation of the confidentiality of juvenile information pending appeal may pose unusual practical problems for appellate counsel, we are not convinced such difficulties make effective appellate advocacy impossible.

court may issue an order prohibiting or limiting access to the juvenile case file, or any portion thereof, of a deceased child only upon a showing that release of the juvenile case file or any portion thereof is. detrimental to the safety, protection, or physical, or emotional well-being of another child who is directly or indirectly connected to the juvenile case that is the subject of the petition." (§ 827, subd. (a)(2), as amended by Stats. 1999, ch. 996, § 22.3.)

The 1999 legislation was prompted by the deaths of several dependent children. The Legislature decided that opening the records of a deceased child to public scrutiny would promote free investigation, uncover any government culpability, and prompt necessary changes in the system of placing and monitoring dependents. (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 199 (1999-2000 Reg. Sess.) as amended May 6, 1999, p. 1.)

Subdivision (a)(2) constitutes one of several inroads into the barrier of confidentiality that protects juvenile records.  ▮▮▮▮  Though it is still the Legislature's intent "that juvenile court records, in general, should be confidential" (§ 827, subd. (b)(1)), this policy has become less absolute, and the lawmakers in the recent past have authorized significant departures from it.[6] For example, since 1992 a juvenile court may permit, upon good cause shown, "any . . . person" to inspect the records of a juvenile dependent. (§ 827, subd. (a)(1)(M), as amended by Stats. 1994, ch. 1018, § 1, pp. 6196-6199; Stats. 1994, ch. 453, § 14, pp. 2548-2550; Stats. 1993, ch. 589, § 193, pp. 3082-3084; Stats. 1992, ch. 148, § 1, pp. 437-440.) Newspapers and other representatives of the press qualify as "persons" under this provision. (See *In re Keisha T., supra,* 38 Cal.App.4th 220.) In addition, certain specific categories of individuals may inspect juvenile records without first obtaining a court order. As of and after 1994, the list includes city attorneys and prosecutors who handle criminal or juvenile cases, judges, referees, hearing officers, and law enforcement officers actively participating in criminal or juvenile proceedings involving the minor, the superintendent of the school district where the minor is enrolled, members of child protective agencies, children's multidisciplinary teams, and persons or agencies providing treatment or supervision of the minor. (§ 827, subd. (a)(1), as amended by Stats. 1994, ch. 1019, § 4, pp. 6204-6207.)

In cases not governed by subdivision (a)(2) where a prior court order is required for access—that is, whenever "any . . . person" other than one who

---

[6]There is a strong public policy in keeping juvenile proceedings confidential, in order to protect the child involved from future adverse consequences and unnecessary emotional harm. (*T.N.G. v. Superior Court, supra,* 4 Cal.3d at p. 778.)

falls within a specified category seeks disclosure—the juvenile court must inspect the file in question and determine what information, if any, should be released. (§ 827, subd. (a)(1)(M); *In re Keisha T, supra*, 38 Cal.App.4th at pp. 240-241.) The court must take into account any restrictions on disclosure found in other statutes, the general policies in favor of confidentiality and the nature of any privileges asserted, and compare these factors to the justification offered by the applicant. (Subd. (a)(2); *In re Keisha T, supra*, 38 Cal.App.4th at p. 241.) The process may be lengthy, and the balance of the concerns weigh predominately against access. (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 199 (1999-2000 Reg. Sess.) as amended Apr. 8, 1999, pp. 2-4; see also *In re Keisha T., supra*, 38 Cal.App.4th 220.)

In cases governed by subdivision (a)(2), the Legislature has decided that the considerations favoring confidentiality are for the most part trumped by the considerations favoring public view, government accountability and reform. The legislators concluded that, when a dependent child dies in the care of a public agency, the need for confidentiality evaporates and the requirement for an expedited decision becomes manifest, because community reaction to the child's death may abate with the passage of time, and, without prompt investigation and assessment, the "opportunity to effect positive change" may cease. (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 199, *supra*, as amended Apr. 8, 1999, p. 1-4; Assem. Com. on Judiciary, Rep. on Sen. Bill No. 199, *supra*, as amended May 6, 1999, p. 2.)

In contrast to the veritable presumption in favor of confidentiality that attends the juvenile records of a living child, subdivision (a)(2) reflects a veritable presumption in favor of release when the child is deceased. (See Assem. Republican Caucus, analysis of Sen. Bill No. 199 (1999-2000 Reg. Sess.) as amended May 6, 1999, June 26, 1999, p. 1; Assem. Com. on Judiciary, Rep. on Sen. Bill No. 199, *supra*, as amended May 6, 1999, p. 3; Sen. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 199 (1999-2000 Reg. Sess.) as amended July 1, 1999, p. 1.) Thus, unlike records pertaining to a living dependent, which must be maintained as confidential unless some sufficient reason for disclosure is shown to exist, records pertaining to a deceased dependent must be disclosed unless the statutory reasons for confidentiality are shown to exist.

We find two exceptions to disclosure written into subdivision (a)(2). The first arises when the records pertaining to the deceased child contain information about another living child. Obviously desiring that the presumption in favor of confidentiality should persist as to such living children, the Legislature in subdivision (a)(2) required the juvenile court to resort to the

simple expedient of redaction as the principal means by which to protect the other child. (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 199, *supra*, as amended Apr. 8, 1999, pp. 2-3; Sen. Rules Com., Rep. on Sen. Bill No. 199 (1999-2000 Reg. Sess.) as amended May 6, 1999, p. 2.) However, the Legislature also obviously recognized that redaction may not in every case be sufficient to serve this end, given the potential complexities of dependency proceedings, including consolidated actions involving several children and multiple placements with a single foster home. The subdivision therefore articulates a second exception to the presumption of disclosure—the limitation or outright prohibition of access to all or a part of the records relating to a deceased child when disclosure is shown to be detrimental to "the safety, protection, or physical, or emotional well-being of another child who is directly or indirectly connected to the juvenile case that is the subject of the petition." (Subd. (a)(2).)

Considering the subdivision in its entirety, we disagree with appellants that redaction is the "required remedy to protect information pertaining to other children." To the contrary, we think the grant of power to the juvenile court to restrict or entirely deny all access to some or all of the records of a deceased child, when the statutory conditions are proved, is an alternative separate and apart from redaction.[7] First, the two remedies are inconsistent. Redaction, on the one hand, reduces the amount of information disclosed from a deceased child's file, but the retained information relates only to the other child, not to the deceased child. The inclusion of the phrase "except for information about the deceased" child in the statutory text dealing with redaction is consistent, for it appears to manifest a legislative intention that information about the deceased child is not to be excised even if this information may also relate to or identify another child. On the other hand, the last portion of subdivision (a)(2) authorizes the court to limit or prohibit the dissemination of information about the deceased child when the court, even after it has redacted all information pertaining solely to the other child,

---

[7]Interestingly, the legislative history reflects that this provision was the subject of some debate before the final version was adopted. The language was expanded from "siblings and half siblings," to "another child within the jurisdiction" of the juvenile court, to "another child who is or was in the jurisdiction" of the juvenile court and finally to "another child who is directly or indirectly connected to the juvenile case which is the subject of the petition." (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 199, *supra*, as amended Apr. 8, 1999, Apr. 20, 1999, May 6, 1999, and July 1, 1999.) The concern of the Legislature for the need to protect living children from harm resulting from disclosure of what would normally be confidential information is reflected in the expansion of this provision to cover any child which might be affected by this fundamental change in policy.

concludes that information about the deceased child should not be released because it will somehow tend to harm the other child.[8]

Second, the two remedies must be presumed to have been intended to be effective. The Legislature would have had no conceivable purpose in authorizing the juvenile court to curtail all access to the records of a deceased child under the specified conditions if it intended redaction of information about another child to be the only means by which to protect that other child. (See *Stafford v. Realty Bond Service Corp.* (1952) 39 Cal.2d 797, 805 [249 P.2d 241] [courts do not presume the Legislature indulged in an idle act].)

Third, the two remedies are separated by the statutory language itself. The final sentence of the subdivision is introduced by the clause "Except as provided in this paragraph." The prior sentences of "this paragraph," i.e., subdivision (a)(2), mandate that disclosure of a deceased child's records be ordered, with the redaction of information relating solely to other children. The introductory words of the last sentence therefore can only be read as manifesting a legislative desire that the grant of judicial power to wholly or partially deny access to the deceased child's records is separate from the provisions of the preceding portion of the subdivision. In addition, the fact that the last paragraph of the subdivision gives the court the power to take into account other living children who are "indirectly connected" to the case involving the deceased child demonstrates that the Legislature contemplated situations where there might be little or nothing about another child to redact and yet the nature of the information in the deceased child's file, if released, would tend to prejudice the other child.[9]

## II.

### A.

◼ The juvenile court's order was accompanied by the statement, framed for the most part in the relevant statutory language, that the release of Jaime's records "would be detrimental to the safety, protection, physical, or emotional well-being of another child who is directly or indirectly connected" to the juvenile court case. Appellants maintain this expression does

---

[8]The statute seems to permit the court to release unredacted records, because the phrase "unless a specific order is made . . . , to the contrary" (§ 827, subd. (a)(2)) appears at the end of the sentence dealing with redaction.

[9]We do not purport to explore the boundaries of the concept of detriment "to the safety, protection, or physical or emotional well-being of" another child. For example, it is conceivable a claim could be made that emotional harm will be inflicted upon another child by virtue of the fact of public dissemination of the deceased child's records, even though the other child is not a dependent or is not even identified in the deceased child's files. Neither this situation nor anything comparable is before us, and we therefore do not address it.

not promote meaningful appellate review. According to appellants, the juvenile court was compelled to do more than just repeat the words of subdivision (a)(2). As McClatchy puts it, "the juvenile court was required to provide specific factual findings demonstrating that its denial of the petition to release juvenile case files served some overriding interest. Mere conclusory statements which parrot the language of the statute are insufficient. In addition, the juvenile court's findings should also reveal whether less restrictive alternative to outright denial of the petition were considered and the reasons such alternatives were not acceptable.

Appellants rely on several cases, both state and federal, which have held that certain specific factual findings are required when the press is denied access to otherwise public information. (*Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325 [283 Cal.Rptr. 893, 813 P.2d 240]; *Telegram-Tribune, Inc. v. Municipal Court* (1985) 166 Cal.App.3d 1072 [213 Cal.Rptr. 7]; *United States v. Brooklier* (9th Cir. 1982) 685 F.2d 1162; *United States v. Criden* (3d Cir. 1982) 675 F.2d 550, 554, 562; *NBC Subsidary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178 [86 Cal.Rptr.2d 778, 980 P.2d 337] (*NBC Subsidiary*).)[10] While we have no quarrel with these opinions, we do not find them dispositive here. First, as appellants implicitly acknowledge, the information they seek is not public; there is no overarching First Amendment right to unfettered access to juvenile court proceedings. (*San Bernardino County Dept. of Public Social Services v. Superior Court* (1991) 232 Cal.App.3d 188, 196-197 [283 Cal.Rptr. 332]; *In re Keisha T., supra*, 38 Cal.App.4th at pp. 233-234; *In re Tiffany G., supra*, 29 Cal.App.4th at p. 451.)[11] Logically, the same must be said for juvenile court records. (See *NBC Subsidiary, supra*, 20 Cal.4th at pp. 1217-1218 [access issues involve both closure of proceedings and sealing of records].)

---

[10]Findings of fact facilitate orderly analysis by the trial court, aid appellate review, and enable the parties to determine whether and on what basis review should be sought. (*In re Podesto* (1976) 15 Cal.3d 921, 937-938 [127 Cal.Rptr. 97, 544 P.2d 1297]; *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 517 [113 Cal.Rptr. 836, 522 P.2d 12].)

[11]In its reply brief, McClatchy implies that *San Bernardino* might not be decided the same way today. If this is an invitation to this court to reexamine *San Bernardino*, we decline. McClatchy has pointed to nothing, by way of authority or argument, that was not considered by the court in *San Bernardino*. Moreover, *NBC Subsidiary* is not to the contrary. In *NBC Subsidiary*, the Supreme Court did not hold that press access to civil proceedings can never be judicially restrained. Instead, the court, interpreting Code of Civil Procedure section 124 in a constitutional manner, decided that under certain limited conditions press access to civil trials may be curtailed if an overriding interest supports closure or sealing, a substantial probability exists the interest will be prejudiced without closure or sealing, the closure or sealing is narrowly tailored to serve only the overriding interest, and there is no less restrictive means of protecting the overriding interest. (*NBC Subsidiary, supra*, 20 Cal.4th at pp. 1217-1218.) The court expressed no intention to decide any question of media access in juvenile matters. (*Id.* at p. 1212, fn. 30.)

Second, this is not a case analogous to *NBC Subsidiary, supra,* 20 Cal.4th 1178, where the statute in issue, Code of Civil Procedure section 124, contained no provisions identifying what findings were necessary before a civil proceeding could be closed to the media, and therefore the Supreme Court was constrained to construe the statute constitutionally by judicially engrafting onto it acceptable standards. Here, by contrast, the subdivision does state the ground—harm to another child—which authorizes complete or partial nondisclosure. Appellants have not made any argument or offered any authority to the effect that the protection of other, involved children is not a legitimate "overriding interest" that can legally support a restriction or outright ban on the disclosure of a decedent child's juvenile records. (See *NBC Subsidiary, supra,* 20 Cal.4th at pp. 1217-1218.)[12] In point of fact, the authorities favor the statutory condition. (See *T.N.G. v. Superior Court, supra,* 4 Cal.3d at p. 778; *In re Tiffany G., supra,* 29 Cal.App.4th at p. 451; *In re Michael B., supra,* 8 Cal.App.4th at p. 1706; *Lorenza P. v. Superior Court, supra,* 197 Cal.App.3d at pp. 610-611; *Navajo Express v. Superior Court, supra,* 186 Cal.App.3d at p. 985.) The primary concern raised by a request for access to juvenile records is the best interests of the impacted child or children. (*In re Tiffany G., supra,* at p. 451.) The showing required by subdivision (a)(2) as a condition to the restriction or denial of access to information detrimental to a child other than the deceased child addresses that concern directly. (See *In re John H.* (1978) 21 Cal.3d 18, 21-25 [145 Cal.Rptr. 357, 577 P.2d 177]; *In re Lawrence B.* (1976) 61 Cal.App.3d 671, 675 [132 Cal.Rptr. 599] (dis. opn. of Jefferson, J.).)

Third, the statutory language describes a circumstance that is as concrete as it rationally can be, given the confidential nature of the information about the other child. A closure order must articulate the interest involved and be accompanied by a statement of reasons, "specific enough that a reviewing court can determine whether the closure order was properly entered." (*Press-Enterprise Co. v. Superior Court oc Cal.* (1984) 464 U.S. 501, 510 [104 S.Ct. 819, 824, 78 L.Ed.2d 629]; *NBC Subsidiary, supra,* 20 Cal.4th at p. 1204.) The goal to be served by subdivision (a)(2) is apparent—the best interests of a living child "who is directly or indirectly connected to the juvenile case that is the subject of the petition." (§ 827, subd. (a)(2); see *T.N.G. v. Superior Court, supra,* 4 Cal.3d at p. 778; *In re Tiffany G., supra,* 29 Cal.App.3d at p. 451.) A conclusion by the juvenile court that release of information relating

---

[12]Neither appellant rested upon a right to disclosure other than as may be permitted under subdivision (a)(2), and neither appellant asked the juvenile court to make the findings they now claim were necessary. Rather, both petitions in the juvenile court cited section 827 as authority for the disclosure sought. For example, McClatchy's petition, as amended, advanced no argument for disclosure other than that McClatchy had met "[a]ll requisite elements of the disclosure statute . . . ."

to the deceased child is "detrimental to the safety, protection, or physical, or emotional well-being" of an involved living child recites a legitimate reason for retention and provides the appellate court with a point on which to focus its evaluation of the record. (§ 827, subd. (a)(2); see *Topanga Assn. for a Scenic Community v. County of Los Angeles, supra,* 11 Cal.3d at p. 516 [Adequate findings relieve the appellate courts of having to "grope through the record to determine whether some combination of credible evidentiary items which supported some line of factual and legal conclusions supported the ultimate order or decision . . . ."].) Given the myriad of unpredictable circumstances that could serve to connect a yet-living child with the former dependency of a deceased child, any more specific standard would risk, on the one hand, the exclusion of a case where the maintenance of confidentiality is appropriate and, on the other, the disclosure of confidential information in an effort to support a decision intended to protect that information.

Fourth, though the juvenile court did not expressly find that redaction was not available as a less restrictive alternative to complete secrecy, the court's determination that preserving the confidentiality of Jaime's records was necessary to protect another child was tantamount to a finding that redaction of the information pertaining solely to the other child was inadequate to do so. (See *In re Jesse B.* (1992) 8 Cal.App.4th 845, 851 [10 Cal.Rptr.2d 516] [order terminating reunification in juvenile case implies a finding that child will not suffer detriment as a result of termination].) We explained above that the statute requires full disclosure of the information about the deceased child even if it relates to or identifies another child, unless whole or partial retention of that information is necessary to safeguard the interests of the other child. Consequently, the juvenile court's ruling in this case that the withholding of all of Jaime's files was necessary to protect another involved child reflects an implicit determination by the court that redaction of any information pertaining solely to such child would not guard the interests of that child because of the nature of the information pertinent to Jaime.

B.

We are not persuaded by Pack's alternate argument that the juvenile court's statement does not comport with subdivision (a)(2) because the court used the subjective tense "would be detrimental" instead of the declarative "is detrimental" found in the statute. Subdivision (a)(2) unambiguously addresses conditional conduct—if the information in the file is released, harm will or is likely to follow. The juvenile court's expression accurately

reflects this sentiment. There is no material difference between the language of the statute and the language used by the juvenile court.

Moreover, the variance is not of such import as to compel either reversal with directions to the juvenile court to enter an order releasing Jaime's records or an outright order to that effect by this court. At most we would remand for correction, a needless waste of time which we are confident would not result in the entry by the juvenile court of a finding favorable to appellants. (See *People v. Osband* (1996) 13 Cal.4th 622, 728 [55 Cal.Rptr.2d 26, 919 P.2d 640] [no prejudice in a criminal case where reversal of technical sentencing error would not likely result in the imposition of a different sentence on remand]; 9 Witkin, Cal. Procedure, *supra*, Appeal, § 417, p. 467 [no reversible harm in civil case when technical error can be corrected]; *id.*, § 418, p. 467 [inadvertent misuse of terms by court not prejudicial].)

### III.

Now that we have determined the issues of statutory construction raised by appellants' briefs, we address the standard of review applicable to the juvenile court's order.

A juvenile court's decision to grant or deny a petition to release confidential juvenile records under subdivision (a)(1) of section 827 and California Rules of Court, rule 1423 is reviewed for abuse of discretion. (*In re R. G.* (2000) 79 Cal.App.4th 1408, 1413 [94 Cal.Rptr.2d 818]; see also *In re Keisha T., supra,* 38 Cal.App.4th at p. 225.) McClatchy says this test is not pertinent to subdivision (a)(2) and we must assess the record de novo and exercise our independent judgment as to the merits of appellants' petitions because (1) the interpretation of a statute such as subdivision (a)(2) is a question of law; (2) there were no disputed factual issues raised in the juvenile court; and (3) the petitions present First Amendment issues. McClatchy maintains the "proper remedy on appeal is for this court to conduct an independent review of the juvenile case files and to issue a ruling on the merits of the petitions releasing the juvenile case files in question." HSA takes the position the correct standard of review is abuse of discretion.

We agree appellate interpretation of a statute or rule is a question of law and is evaluated de novo by the appeals court. (*Hansen Mechanical, Inc. v. Superior Court* (1995) 40 Cal.App.4th 722, 727 [47 Cal.Rptr.2d 47]; *Jefferson v. Compton Unified School Dist.* (1993) 14 Cal.App.4th 32, 38 [17

Cal.Rptr.2d 474].) However, other than with respect to appellants' allusion that subdivision (a)(2) establishes redaction as the only remedy available to the court to protect other children and appellants' challenge to the formal sufficiency of the juvenile court's findings, issues we have already resolved, the contentions advanced by appellants relate not to the construction or interpretation of the subdivision but instead to its application in this case; that is, whether the juvenile court's refusal to allow access to any part of Jaime's file was in some manner in violation of the statute.

Next, though we agree there were no written objections filed in the trial court, appellants' petitions were not unopposed.[13] Foreclosed by the trial court's refusal to permit a confidential response to the petitions, HSA and the other objectors were relegated to orally stating their respective positions and arguing in general terms at the hearing against disclosure. The hearing record leaves no doubt the objectors took the position the petitions should be denied in toto under section 827, subdivision (a)(2), even though the ability of the objectors to present facts and specific reasons supporting this stance was compromised by the need to maintain confidentiality in the absence of a protective order. For example, the minor's advocate, for one, stated that: "if there is another child involved in this case, there can be some very serious issues. I feel a little bit restricted of what I can say here because of the nature of the hearing and the press being here and the confidentiality issue. But I think there could be some very serious issues and information that I think will have to be redacted from the file and the Court would have to look at [it] very carefully in determining what information that the press should have access to."

Counsel's comments were not limited to the name of or identifying information about another child, but included "information that pertains to Jaime that could be detrimental to another child." The same points were made by counsel for the mother.

In addition, the juvenile court was not obliged to grant appellants' petitions even in the absence of opposition or objection, written or oral.

---

[13]The reason why no written objections to the petitions were filed is apparent—the juvenile court refused to allow the filing of opposition under seal. Because the court would not enter the requested protective order, the objectors were placed in an impossible position. If their purpose was to keep the file confidential because of the potential for detriment to another child, disclosing the information pertinent to the other child in order to frame opposition to the petition would be self-defeating and put the objectors in the position of having violated the confidentiality of those juvenile records. This concern was raised again during the hearing, but the juvenile court still declined to grant any protective order for purposes of the hearing.

As the parties themselves acknowledged at the hearing, subdivision (a)(2) imposes an independent duty on the juvenile court to seek out the positions of interested third parties and protect the interests of *any child* directly or indirectly connected to the case. (Subd. (a)(2).) The children to whom the benefits of the statute extend need not be parties to the case or even be under the jurisdiction of the juvenile court.

The Legislature knew precisely what it was doing when it wrote the provisions relating to the protection of other children. (Sen. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 199, *supra*, as amended July 1, 1999, p. 1; Assem. Republican Caucus, analysis of Sen. Bill No. 199, *supra*, as amended July 1, 1999, p. 1, see also fn. 4.) Senate Bill No. 199 as initially authored allowed release of the juvenile court file without court intervention, unless a petition was filed by some person contesting the release. Early in the process, this self-executing procedure was rejected, and a court supervised release process was substituted. (Compare Sen. Bill No. 199, proposed subd. (a)(3), as introduced, with Sen. Bill No. 199 as amended Apr. 8, 1999, proposed subd. (a)(3).) It seems apparent the Legislature was unwilling to leave to unknown persons the responsibility for looking after the interests of involved other children and was quite content to place this responsibility on the juvenile courts.

Furthermore, the juvenile court had evidence, in the form of the records pertaining to Jaime, relating to the issues raised by appellants' petitions. Even if the contents of these records were not in dispute, the same cannot be said about the inferences and conclusions that might be drawn from the facts stated in the records. The records were before the court by virtue of the parties' unanimous agreement that the juvenile court would review Jaime's records in camera and on that basis decide how best to protect the interests of any directly or indirectly involved other children. The records were themselves sufficient proof of the nature of the information they contained. (See *In re Maria V., supra,* 167 Cal.App.3d at p. 1103.) If the contents of these records rationally supported a conclusion that disclosure would be detrimental to another child, we know of no authority or reason, and appellants have provided none, which made necessary any further proof. (*In re Keisha T., supra,* 38 Cal.App.4th at pp. 233-234 [the juvenile court is best suited to evaluate what is in the child's file and what, if anything, contained in that file might be detrimental to another child]; *In re Tiffany G., supra,* 29 Cal.App.4th at p. 451 [same].) In camera review was an appropriate procedure, and is routinely used when a judicial decision concerns information claimed to be covered by some rule of confidentiality or privilege. (*In re*

*Maria V., supra,* 167 Cal.App.3d at p. 1103.)[14] Cases involving media claims to access are not exempted. (*Globe Newspaper Co. v. Superior Court* (1982) 457 U.S. 596, 609, fn. 25 [102 S.Ct. 2613, 2621, 73 L.Ed.2d 248]; *Richmond Newspapers, Inc. v. Virginia* (1980) 448 U.S. 555, 598, fn. 23 [100 S.Ct. 2814, 2839, 65 L.Ed.2d 973]; *Telegram-Tribune, Inc. v. Municipal Court, supra,* 166 Cal.App.3d at p. 1078.)

If the foregoing appears to presage a decision that the correct standard of review is abuse of discretion, it is deceiving because we think the subtly different "substantial evidence" test is the appropriate one when an appellate court is called upon to review a juvenile court's order under subdivision (a)(2) withholding all or part of a deceased child's records based upon prejudice to another involved child. Though both the abuse of discretion test and the substantial evidence test entail "considerable deference to the fact-finding tribunal" (*Department of Parks and Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 831 [284 Cal.Rptr. 839]), the former centers upon legal principles—whether, in light of the record, the trial court's ruling "falls within the permissible range of options set by the legal criteria" (*Dorman v. DWLC Corp.* (1995) 35 Cal.App.4th 1808, 1815 [42 Cal.Rptr.2d 459])—while the latter centers upon evidentiary proof—whether the trial court's factual conclusions are rationally supported by record evidence (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 [80 Cal.Rptr.2d 378]).

We are led by the relevant language of subdivision (a)(2), which permits retention of the deceased child's records only when a "showing" of prejudice to another child is made. The juvenile court thus does not have, given the evidence, a range of viable alternative options within the bounds of the law. Instead, it has no discretion and *must* release all the records of the deceased child in the absence of proof (1) that there exists "another child who is directly or indirectly connected to the juvenile case," and (2) that release of all or a portion of the deceased child's records is "detrimental to the safety, protection, or physical, or emotional well-being" of the other child. (Subd. (a)(2).) By contrast, a request for disclosure of juvenile records under subdivision (a)(1) of section 827 puts the court in the position of balancing the preference for confidentiality and the best interests of the minor against

---

[14]The procedure consists generally of two parts. First, the parties present a general outline of their respective positions supported by nonconfidential or nonprivileged evidence. Thereafter, the parties identify the specific confidential or privileged evidence for in camera review. The superior court then preserves the in camera record for later appellate review. (See *In re Keisha T., supra,* 38 Cal.App.4th at pp. 240-241; *Telegram-Tribune, Inc. v. Municipal Court* (1985) 166 Cal.App.3d 1072 [213 Cal.Rptr. 7] [procedure used in determining whether public should be granted access to a preliminary hearing in a first degree murder prosecution.].)

the benefits of public disclosure and the legitimate interest of the person seeking access, and then selecting a course of action which best deals with the conflict among the competing concerns. (See *In re Keisha T., supra,* 38 Cal.App.4th at p. 240.) The same is true, for example, under section 366.26 when the juvenile court must decide whether to terminate parental rights and place the child for adoption or instead to consider alternate placement options because termination would be detrimental to the child. (§ 366.26, subd. (c)(4).) This decision necessitates the weighing of the child's need for stability against the extent of the detriment that would flow from termination and the identification of " 'a compelling reason for determining that termination would be detrimental to the child.' " (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1349 [93 Cal.Rptr.2d 644].) Review of such an order is governed by the abuse of discretion test. (*Id.* at p. 1351.)

The determination to withhold all or part of a deceased child's records under subdivision (a)(2) is more like a ruling under section 300 when the juvenile court must decide whether a minor comes within the statutory description of a dependent child. (§ 300; *In re Brison C.* (2000) 81 Cal.App.4th 1373, 1378-1379 [97 Cal.Rptr.2d 746].) In this instance, the juvenile court must evaluate whether the evidentiary facts prove any one or more of the statutory criteria indicative of a dependent child. (*In re Brison C., supra,* 81 Cal.App.4th at pp. 1378-1379.) Review of such an order is governed by the substantial evidence test. (*Ibid.*) Analogous also is a ruling under section 361.5, subdivision (b) when the juvenile court must decide whether to deny reunification services to a parent. (§ 361.5, subd. (b); *In re Brian M.* (2000) 82 Cal.App.4th 1398, 1401-1402 [98 Cal.Rptr.2d 881].) In this instance, the juvenile court must evaluate whether the evidentiary facts prove any one or more of the statutory criteria justifying the disallowance of services. (See *Brian M. v. Superior Court, supra,* 82 Cal.App.4th at pp. 1401-1402 [§ 361.5, subd. (b)(12)].) Review of this type of order is likewise governed by the substantial evidence test. (82 Cal.App.4th at p. 1401.)

In *In re Jasmine D., supra,* 78 Cal.App.4th at page 1351, the court found that abuse of discretion was a "better fit" than substantial evidence as the standard applicable to the review of juvenile court custody rulings under section 366.26 because custody decisions are "typically reviewable for abuse of discretion" and because the statutory mandate that a refusal to terminate be supported by a " 'compelling reason' " is a "quintessentially discretionary determination." We think substantial evidence is the "better fit" for purposes of review of decisions under the last sentence of subdivision (a)(2). First, although this part of subdivision (a)(2) does not expressly require the

juvenile court to "find" by any measure of proof that detriment to another child would result from disclosure of the deceased child's records, the language used is tantamount to such a directive, for, unless the specified ultimate facts—the existence of and prejudice to another child—are established, the court is without authority to withhold the sought after records. Thus, subdivision (a)(2) does not contemplate a balancing of a variety of competing interests and the fashioning of an order which represents a reasonable adjustment of the several factors. The court has no discretion to deny release of the deceased child's records for some compelling reason borne out by whatever circumstances may be found to be material; the court cannot do anything but release the records in the absence of a "showing," i.e., *evidence*, demonstrative of prejudice to another child. Second, the application of the substantial evidence standard is consistent with the presumption of disclosure inherent in subdivision (a)(2) and better protects the interests of the public and furthers the Legislature's intent to promote governmental responsibility and reform. Review on the basis of substantial evidence ensures that restrictive orders will be rigorously tested against the record facts and upheld only when there is evidence of sufficient value to justify the effective rebuttal of the presumption favoring disclosure.

## IV.

We now turn to the question whether the juvenile court here erred by refusing to give appellants access to Jaime's juvenile records.

### A.

Appellants contend their petitions should have been granted (with redaction of information relating to any other involved child) because there was no proof "under any evidentiary standard" that release of Jaime's juvenile records would be detrimental to another child. Appellants point to the absence of any "declarations, affidavits, or testimony" in opposition to, and of any written objections to, the petitions.

We have already addressed this subject. To summarize, the juvenile court had an independent obligation to consider the interests of other children in ruling upon appellants' petitions even in the absence of any objection by a specific person or entity. There were, in any event, oral objections by HSA and others, and there was evidence, in the form of the records sought, properly considered in camera by the juvenile court, with the consent of all parties, in ruling on the merits of the petitions.

B.

■ We arrive now at the last issue presented by this appeal—was there substantial evidence before the juvenile court to support the court's refusal to release any of Jaime's records? We conclude there was such evidence and therefore that the juvenile court did not err by denying appellants' petitions entirely.[15]

Having read Jaime's files, we understand fully the juvenile court's dilemma and why the court found it so difficult to expound on its conclusions without at the same time compromising the interests of another child connected to Jaime's case, the very thing the court was required to protect. We now face the same quandary, with an added element arising out of our own constitutional obligations. We must, on the one hand, evaluate whether the decision of the juvenile court is supported by substantial evidence and at the same time carry out the legislative intent that Jaime's records be kept confidential if we conclude the evidence supports the juvenile court's decision that disclosure would operate to the detriment of another child. On the other hand, we must also state the reasons for our opinion. (Cal. Const., art. VI, § 14). The following is our best effort at satisfying these commands.

The contents of the relevant records amply justify a conclusion that release of any part of them would be highly detrimental to the well-being of another child. The initial petition that invoked the juvenile court's jurisdiction over Jaime also named another child. The subsequent course of the proceeding, and the documents and reports filed in it, involved the other child. Both children were under HSA's close supervision. The continual and intimate linking of the two children in the dependency proceeding makes it impossible as a practical matter to disclose information pertaining to Jaime without disclosing the identity of, or information prejudicial to the interests of, the other child. Redaction is not a reasonable remedy, for there is little if anything in the files which relates only to the other child, and, if only the other child's name were excised, what remained would nonetheless serve to

---

[15]The record establishes the juvenile court understood the terms of the statute, including the presumption in favor of release. The court at the outset of the hearing anticipated that at least some of the records would be opened to petitioners, and attempted to predict the length of the review, redaction, and decision process. Ultimately, however, the court's first impressions were disabused after the files were reviewed in camera.

identify the other child and open to view information obviously relevant and prejudicial to him or her.[16]

In addition, we have complied, though we are not required to do so, with appellants' request that we give independent review to Jaime's records. Having assessed those records de novo and without regard to any of the trial court's express or implied factual findings, we conclude that, for the reasons set out immediately above, (1) release of Jaime's "juvenile case file or any portion thereof is [and will be] detrimental to the safety, protection, or physical, or emotional well-being of another child who is directly . . . connected to" Jaime's case (§ 827, subd. (a)(2)); and (2) redaction from Jaime's case file of all the information pertaining solely to the other child is not a viable, less restrictive alternative.

Beyond these explanations and statements we cannot go without violating the confidentiality due the other child. We recognize the significance of the interests of the public and therefore of the press when a child in governmental custody dies. The Legislature grappled with the clash of the competing viewpoints in drafting subdivision (a)(2), and ultimately concluded that the presumption in favor of disclosure should yield when it would result in harm to a living child.

We also recognize the frustration likely felt by appellants who have been told their presumptive right to access will not be honored in this case but at the same time have not been told why this is so, beyond a recitation of some statutory phrases and a few factual generalities which together probably communicate nothing more than that appellants will not get Jaime's files "because we said so," and without detailed explanation of the substantial evidence which supports the juvenile court's order. We can only respond by pointing out that "because we said so" is about all that can be said in most cases arising under subdivision (a)(2).

We also note that subdivision (a)(2) is not an aberration in the law of California. In many instances where matters claimed to be entitled to some degree of confidentiality are in issue, the courts are authorized to receive the contested data under seal, to review it privately or in the presence of the proponent of confidentiality, to decide the extent and nature of any lawful

---

[16]Though it might be mechanically possible to eliminate all information pertaining to the other child from the records in issues, this remedy would be improper because the material so deleted would apply equally to Jamie. As we explained earlier, subdivision (a)(2) does not permit redaction of information relevant to the deceased child.

disclosure, and to tell the disappointed party only that the claim of confidentiality has been sustained in whole or part, as the case may be. This is true with respect to many qualified privileges, such as trade secret, informant and official information (see Evid. Code, § 915; 2 Witkin, Cal. Evidence (4th ed. 2000) Witnesses, § 88, pp. 340-341), with respect to certain claims under the newsperson's shield law (see 2 Witkin, Cal. Evidence, *supra*, Witnesses, § 348, subd. (2), p. 639; *Delaney v. Superior Court* (1990) 50 Cal.3d 785, 814 [268 Cal.Rptr. 753, 789 P.2d 934]), and with respect to so-called "Pitchess" motions, which seek information from police officer personnel records (see 5 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Trial, §§ 58-59, pp. 113-116). The underlying rationale in all these situations is the same commonsense notion—the right to confidentiality is not preserved by requiring its destruction as a condition precedent or as a condition subsequent to its protection. (See, e.g., *Delaney v. Superior Court, supra,* 50 Cal.3d at p. 814 [the newsperson's shield law "would be illusory if a reporter had to publicly disclose confidential or sensitive information in order for a court to determine whether it should remain confidential or sensitive"].)

### DISPOSITION

The orders denying appellants' respective petitions under section 827, subdivision (a)(2), are affirmed. Given respondent's limited and marginally helpful brief, it will bear its own costs on appeal.

Harris, J., and Levy, J., concurred.

On June 14, 2001, the opinion was modified to read as printed above.